[No. 1004.  Decided February 23, 1894.]

JOHN KLOSTERMAN, *Respondent*, v. MASON COUNTY CENTRAL RAILROAD COMPANY AND ALLEN C. MASON, *Appellants*, WHEELER, OSGOOD & CO. AND O. F. COSPER, *Intervenors and Appellants*.

SETTING ASIDE FRAUDULENT CONVEYANCE — PROCEEDINGS SUPPLEMENTAL — PLEADING — INSOLVENT CORPORATION — TRANSFER TO MORTGAGEE IN PAYMENT OF DEBT.

The provisions of Code Proc., tit. 8, ch. 6, governing proceedings supplementary to execution, do not afford an adequate remedy for the purpose of cancelling and setting aside a fraudulent conveyance of real estate, and resort may consequently be had to a court of equity for relief.

In an action to set aside a fraudulent conveyance, an allegation in the complaint that plaintiff had obtained a specific lien upon the property sought to be subjected to his judgment is unnecessary.

The transfer by an insolvent corporation of all its property to the mortgagee thereof is not such a preference over unsecured creditors as to constitute a fraudulent conveyance; nor is such transfer inhibited under the provisions of art. 12, §8 of the constitution, declaring that no corporation shall alienate any franchise so as to re-

lieve the franchise, or property held thereunder, from the liabilities incurred in the operation, use or enjoyment of such franchise.

*Appeal from Superior Court, Mason County.*

*James Wickersham,* and *Henry S. Tremper,* for appellants.

*Allen & Powell,* for respondent and intervenors.

The opinion of the court was delivered by

ANDERS, J.—The Mason County Central Railroad Company was incorporated in the year 1888, under and by virtue of the laws of the then Territory of Washington. The objects for which it was formed, as indicated in its articles of incorporation, were to build and operate a railroad from Shelton, in Mason county, to some point on the Chehalis river, and to carry on a general lumbering and sawmill business at said town of Shelton. It would seem, however, that the contemplated railroad was not designed or intended as a road for general traffic, but simply as a means of transportation of logs to the company's mill.

The corporation, anticipating an extensive demand for lumber, purchased a large quantity of timber land, mostly in Mason county, and constructed and equipped for logging purposes about six miles of railroad such as is commonly used by mill companies. Its entire property, including mill and appurtenances, lands and railroad, cost in the neighborhood of $125,000. But, in conducting its business, the company found it necessary, from time to time, to borrow money, which it did from various persons and companies, and mortgaged its property to secure the payment thereof. These loans were made by and through the appellant Allen C. Mason, who was a loan broker in Tacoma, but not a stockholder in the appellant corporation. The promissory notes secured by these mortgages, except several for small amounts which were given to Mason him-

self, were indorsed by Mason before delivery to the mortgagees.

In July, 1891, this mortgage indebtedness amounted to some fifty thousand dollars, while, according to the evidence in the record, the entire property of the corporation had so depreciated in value that, at that time, it was not worth more than that sum, even if it could have been sold in the market at all. In addition to the mortgage securities upon which Mason was liable, the company owed Mason $10,000 which he had advanced to it, and for which he held no security. Being otherwise unable to pay this indebtedness, the company, on July 27, 1891, in consideration thereof, and the payment to it of $1,200 in cash, sold and conveyed to said Mason all of the property covered by mortgage, in fact, practically all of the property then owned by it. The deed even purported to convey all the franchises and privileges of the company, but it appears from the testimony of its president that the company did not intend to convey any of its corporate privileges, and that he did not notice, at the time the deed was executed, that it was therein so stated.

It appears that when this deed was executed the railroad company owed other parties, but of that fact Mason had no knowledge whatever. Among its creditors was the respondent, Klosterman, who held a claim against it for something over $300, for goods sold and delivered. And it further appears that on July 20, 1891, he commenced an action against the railroad company to recover the amount of his claim, but neither Mason nor the defendant corporation had any knowledge of it until after the execution of the deed on the 27th of July. On August 27, 1891, judgment was obtained against the defendant for the sum of $323.99, and costs, taxed at $15.80. Thereafter execution was issued and returned "no property found." Thereupon the respondent, Klosterman, as Klosterman & Co., began

this action against the appellants to set aside the deed of July 27, 1891, and to subject the property therein described to the payment of his judgment; and for cause of action, alleged in his complaint, among other things, "that the said conveyance was without consideration, was made in secret trust for said company, and was made with the intent on the part of said company and of said Allen C. Mason to hinder, delay and defraud creditors of the Mason County Central Railroad Company, and especially this plaintiff," and "that the said company has no other property subject to execution out of which the plaintiff's judgment could be satisfied, and is wholly insolvent, and was so insolvent at the date of the aforesaid conveyance, and the defendant Allen C. Mason well knew the fact." A general demurrer to the complaint was interposed and overruled, after which a trial was had upon the issues tendered by the complaint, and the court, notwithstanding it found as a fact that it did not appear that Mason knew of the defendant corporation's debts, other than those for which he had become personally liable, and that at the time of the transfer to Mason the property conveyed to him was not worth more than the amount of the indebtedness for which he had become responsible, adjudged the conveyance void and the property therein mentioned subject to the lien of the plaintiff's judgment. From this judgment and decree the defendants appealed.

It is contended by the appellants that the respondents had a complete and adequate remedy at law under ch. 6, title 8 of the Code of Procedure, by proceedings supplementary to execution, and were, therefore, not entitled to equitable relief. But without reviewing the authorities cited, we think that an inspection of the statutes above mentioned will clearly show that the remedy therein provided is not adequate for the purpose of cancelling and setting aside a fraudulent conveyance of real estate. As

was said by the supreme court of Colorado in *Allen v. Tritch*, 5 Col. 226:

"The right of a judgment creditor to equitable relief in case of the fraudulent transfer of real estate by the judgment debtor is well settled. . . . No like or equivalent remedy can be had by proceedings supplemental to execution, and it exists unimpaired as before the adoption of the code."

It may be conceded that whenever such proceedings are clearly adequate to afford the relief demanded, they are exclusive and a substitute for former remedies, but where they are not, resort may still be had to a court of equity for relief in all cases falling within the settled jurisdiction of that court. Freeman on Executions (2d. ed.), § 394; *Ludes v. Hood*, 29 Kan. 49; Bump, Fraud. Conv. (3d ed.), p. 530.

We think the objection of appellants, that the complaint fails to state a cause of action because it does not allege that plaintiff had obtained a specific lien upon the property sought to be subjected to his judgment, is not well taken. The complaint shows that the plaintiff had exhausted his legal remedies without avail; that the property alleged to have been fraudulently transferred is necessary for the satisfaction of his judgment, and that the plaintiff is in a situation to perfect a lien thereon, upon the removal of the alleged fraudulent deed, and that is all that is necessary to be set forth in a complaint in actions like this. Bump, Fraud. Conv., p. 537; Wait, Fraud. Conv., § 73; *Alnutt v. Leper*, 48 Mo. 319; 2 Wait, Actions and Defenses, 414.

It is claimed on behalf of appellants that the judgment of the lower court must be reversed for the reason that the evidence does not show any fact sustaining the allegations of the complaint. There is much force in this suggestion, for, in our judgment, there is no evidence showing either a want of consideration for the transfer of the property in

question, or that the property was to be held in trust for the railroad company, or that the transfer was made with intent to hinder, delay or defraud creditors. But, notwithstanding this, it is contended by the respondent that inasmuch as the corporation was insolvent at the time its deed was made to Mason, the conveyance was necessarily void as to creditors, for the reasons (1) that such property was a trust fund for the payment of all of the company's debts, and (2) that the sale was in contravention of § 8, art. 12 of the state constitution. This was the view adopted by the lower court in rendering the judgment complained of.

Conceding that the property of an insolvent corporation is a trust fund for the payment of its debts, and that under such circumstances such corporation cannot ordinarily prefer one creditor over another, does it necessarily follow that the transaction under consideration was void as to unsecured creditors? The answer to this question depends largely upon the power of corporations in this state to manage and dispose of their property. That power is expressed in the statute in this language: "To purchase, hold, mortgage, sell and convey real and personal property." Gen. Stat., § 1500. From this comprehensive provision it will be seen that the appellant corporation had a right, in the proper conduct of its business, to mortgage its property to secure its debts. And this being so, it had a right to sell, in good faith, any or all of its property in payment of its mortgage liens. 2 Rorer, Railroads, p. 880; and see *Railroad Co. v. Howard*, 7 Wall. 392; *Warfield v. Marshall County Canning Co.*, 72 Iowa, 666 (34 N. W. 467). In the absence of legislative restrictions, or some limitation arising from its nature, a corporation may dispose of any property it has a right to acquire, in the same manner as an individual. Pierce, Railroads, 503. By legislative permission it may even dispose of its franchise. See *Willamette Mfg. Co. v. Bank of British Columbia*, 119

U. S. 191 (7 Sup. Ct. 187). And a deed purporting to convey the property and franchise may be valid as to the former, though invalid as to the latter. *Coe v. Columbus, etc., R. R. Co.*, 75 Am. Dec., p. 549, note.

In this case there is no showing that the appellant corporation ever acquired any of its property except by purchase. And, under these circumstances, it was under no obligations to the public to retain its property or continue its business longer than it deemed it expedient to do so. In other words, no one but its creditors had a right to question the disposition it made of its property. The statute, as we have seen, conferred upon it the power to dispose of its property, both "real and personal," and the constitution would seem to imply a right even to dispose of its franchise, but not in such a manner as to relieve the franchise or property held under it from certain liabilities of the grantor. Const., art. 12, § 8.

The learned counsel for the respondent and the intervenors insist that, by virtue of the above cited provision of the constitution, the property in question is still subject to the claim of the respondent. But we are not of that opinion. That provision declares, in effect, that, if a corporation shall lease or alienate its franchise, neither the franchise or property held thereunder shall thereby be relieved from liabilities contracted or incurred in the operation, use or enjoyment of such franchise, or any of its privileges. This is but a declaration of what the courts have generally held to be the law, irrespective of constitutional limitations or provisions. *Chicago, etc., Ry. Co. v. Chicago Third Nat. Bank*, 134 U. S. 376 (10 Sup. Ct. 550). But we do not think that there is anything in the law or this provision of the constitution which inhibits a corporation from voluntarily transferring property for the payment of debts for which the property so transferred is legally bound.

Mason is, therefore, the absolute owner of the property

claimed by him, unless the transaction between him and the railroad company is void as to the respondent. That the sale to him was intended to be absolute is abundantly shown by the evidence. The property in his hands is, of course, subject to the mortgages which were upon it at the time of the transfer. And so far as we are able to determine, from a careful consideration of all the evidence in the record, these mortgages are valid liens. Their payment, therefore, by a conveyance of the property at its value cannot be avoided as being a preference of one creditor above another.

This case is easily distinguishable from *Thompson v. Huron Lumber Co.*, 4 Wash. 600 (30 Pac. 742), in which this court set aside a fraudulent and preferential mortgage. This property was held for these debts at all events, irrespective of the claim of respondent; and as the evidence is clear that it was not worth more than the amount for which it was pledged and sold, it follows that the respondent could not have been injured by the transaction complained of.

The cases of the intervenors, Wheeler, Osgood & Co., and O. F. Cosper, are not here upon the merits, and therefore cannot now be finally disposed of. Their complaints show that they base their right to recover upon the same facts relied on by the respondent, Klosterman. But they have appealed from judgments sustaining demurrers to their respective complaints; and as we are clearly of the opinion that they had a right to intervene in the original action, and that their respective complaints state facts sufficient to constitute a cause of action, the judgments of the lower court as to them must be reversed.

For the foregoing reasons, the judgment of the lower court in favor of the respondent, Klosterman & Co., is reversed, and the action dismissed; and the judgments in the cases of the intervenors, Wheeler, Osgood & Co. and O. F.

Cosper, are also reversed, and the causes remanded with directions to overrule the demurrers to their complaints.

DUNBAR, C. J., and HOYT, SCOTT and STILES, JJ., concur.