### KORN et al. v. SPOKANE & EASTERN TRUST CO. et al.

(Circuit Court of Appeals, Ninth Circuit. November 7, 1921.)

No. 3693.

1. **Corporations ☞40—In absence of objection to its validity, amendment to articles held sufficient to authorize conveyance.**

A conveyance by corporation will not be held ultra vires by the Circuit Court of Appeals on ground that amendment to articles of incorporation was not made in compliance with Rem. & Bal. Code Wash. § 3679, requiring majority vote of trustees and vote or written consent of two-thirds of the capital stock, where no objection was made by any stockholder that amendment had not been lawfully made during a long interval between adoption of amendment and conveyance, and where the amended articles were received in evidence on the trial and no objection made that amendment had not been duly authorized and no showing made that requirements of statute had not been complied with.

2. **Corporations ☞439—Conveyance held not ultra vires.**

Where prohibition left a brewing company without funds to pay existing indebtedness and without a continued profitable use for its brewery, its only property, its conveyance thereof to the mortgagee, made in compromising a foreclosure suit on the latter's agreement to reconvey on payment of the mortgage debt within 18 months, was not ultra vires.

3. **Corporations ☞388(2)—Corporation and stockholders held estopped by receiving benefits from asserting conveyance ultra vires.**

Where corporation and stockholders received substantial benefits from conveyance by corporation of mortgaged property to mortgagee, they are estopped from asserting the conveyance was ultra vires after grantee had paid substantial amounts for delinquent taxes and insurance.

4. **Corporations ☞426(11)—Directors held to have ratified unauthorized conveyance.**

Where directors were advised of an unauthorized conveyance, and at subsequent meetings, at which all were present, and at which they dis-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cussed efforts made to dispose of the property, they did not disapprove thereof, the conveyance was ratified.

5. **Corporations** ☞182—**Agreement held not fraudulent as to minority stockholders.**

Where a brewing company, forced to discontinue its business by prohibition and was without funds with which to pay its indebtedness and prevent a mortgage foreclosure, conveyed its property to the mortgagee with option to repurchase on payment of indebtedness within 18 months, the mere fact that mortgagee agreed that the principal stockholder could use the property during such period without rental, of which the stockholder did not avail himself, and released the principal stockholder from his personal guaranty of the indebtedness, did not make the agreement fraudulent as to the other stockholders.

6. **Corporations** ☞182—**Stockholders not entitled to cancellation of conveyance to mortgagee without an offer to return amount of taxes, etc., paid by mortgagee.**

Stockholders *held* not entitled to cancellation of corporation's conveyance to a mortgagee in the absence of a showing of readiness and willingness to return the amount paid by the mortgagee for taxes, insurance, and repairs; the stockholders' rights in such case being no greater than those of corporation itself.

Appeal from the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Suit by Erna Korn and another against the Spokane & Eastern Trust Company, a corporation, and others. Decree of dismissal, and plaintiffs appeal. Affirmed.

Caleb Jones and Post, Russell & Higgins, all of Spokane, Wash., for appellants.

F. H. Graves, W. G. Graves, and B. H. Kizer, all of Spokane, Wash., for appellees.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. The appellant Korn, a stockholder of the B. Schade Brewing Company, brought a suit against the Spokane & Eastern Trust Company and the officers of the brewing company, to set aside a conveyance of the property of the latter company to the trust company. Another stockholder intervened, praying the same relief as did the plaintiff. Upon a trial on the merits, the bill was dismissed for want of equity.

The brewing company, a corporation of the state of Washington, was incorporated in 1903 for the purpose of brewing, manufacturing, and selling beer, with authority to acquire, purchase, and sell real estate and personal property for the purpose of carrying on and conducting a general malting and brewing business. In 1907 an amendment to the articles of incorporation gave the corporation power to purchase, mortgage, sell, and convey real and personal property "for any purpose which the corporation may deem expedient or necessary to aid in, increase, or protect any business it may now or hereafter become engaged in." The corporation constructed a brewery in Spo-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

kane, and was engaged in the business of making and selling beer until January 1, 1916, when the Washington Prohibition Act (Laws 1915, p. 2) became effective. Thereafter, discouraged by an unsuccessful attempt to operate a soft drink establishment, it ceased all business. It had a capital stock of 5,000 shares, of which B. Schade owned 2,606. He, his wife, and R. Stritesky were the directors. In 1914 the brewing company owed the trust company $50,000 for borrowed money and it executed notes to the trust company to that amount, and secured the same by a mortgage upon all its property. At the demand of the trust company, B. Schade personally guaranteed the payment of the notes. The business of the brewing company having been destroyed by prohibition, it had no money or resources to pay interest on its debt or taxes or insurance on its property. The trust company caused suit to be brought for foreclosure. It joined B. Schade as defendant, and made Mrs. Schade defendant for the purpose of having her husband's guaranty adjudged to be a community obligation. After the cause had been set for trial, it was compromised. The brewing company conveyed the mortgaged property to the trust company, and the latter surrendered the notes and released the mortgage and caused the foreclosure suit to be dismissed. At that time the debt, together with interest, taxes, and insurance paid by the trust company, amounted to $63,650. The trust company gave the brewing company an option to repurchase the property within 18 months thereafter on paying the amount of the indebtedness. The corporations agreed to co-operate in efforts to sell the property during the period of the option. Notwithstanding their efforts, they failed to accomplish a sale, and at the expiration of the option period, on July 1, 1919, the trust company took possession of the property. On August 25, 1919, the trust company made an offer to the stockholders of the brewing company to give each of them an interest in the property proportionate to his holdings in the brewing company if he would pay a proportionate share of the indebtedness, which at that time was $76,000. Seven or eight of the stockholders accepted the offer.

[1] The main contentions of the appellants are that the conveyance was ultra vires, that it was not authorized by the board of directors of the brewing company, and that it was fraudulent in that the officers of the brewing company personally profited thereby. As to the first of these contentions it is urged that the amendment of the articles of incorporation which was made in 1907, and which increased the powers of the corporation in the matter of purchasing, mortgaging, and conveying real and personal property, was void for the reason that it was made without the unanimous consent of the stockholders. The statute of Washington, however (Rem. & Ball. Code, § 3679), provides that amendment may be made to articles of incorporation "by a majority vote of its trustees and by the vote or written consent of two-thirds of the capital stock of such corporation." During all the years which succeeded the adoption of the amendment of 1907, no objection was made by any stockholder that the amendment had not been lawfully made, and on the trial when the amended articles were received in evidence, no objection was interposed on the ground that

the amendment had not been duly authorized. Nor did the appellants on their part offer evidence to show that the requirements of the statute had not been complied with. Such being the facts, it cannot now be held that the amendment was not in force and effect at the time of the conveyance which is complained of.

[2] In the year 1918, at the time when the conveyance was made, the brewing company had no property other than its brewery. It had no business save the manufacture and sale of beer. Its whole capital was invested in that business. Prohibition had put an end to the brewing business, not only in Washington but in the adjoining states of Idaho and Oregon, and Congress had adopted a joint resolution proposing the Eighteenth Amendment. After the failure of the brewing company to run a soft drink establishment, it did no business. It could not pay its taxes. Schade testified that the conveyance was made because the company "could not pay the mortgage and there wasn't anything else to do." The evidence indicated that Mr. Schade industriously endeavored to stave off foreclosure and to sell the property during the period of the option. In Thompson on Corporations (2d Ed.) § 2429, it is said:

"The majority stockholders, even as against the protest of the minority, may dispose of all the property when the corporate business has become unprofitable and where it would be ruinous to the corporation and the stockholders to continue the business, or where there are insufficient funds to continue the business, and no money with which to pay existing indebtedness, or when the corporation is in failing circumstances, or is in fact insolvent."

That doctrine finds support in the decisions of the Supreme Court of Washington (Lange v. Reservation Min. Co., 48 Wash. 167, 93 Pac. 208; Logie v. Mother Lode Copper Mines Co., 106 Wash. 208, 179 Pac. 835; Klosterman v. Mason County Ry., 8 Wash. 281, 36 Pac. 136), and it fully answers the contention that the conveyance here involved was ultra vires.

[3] Again, the circumstances are such as to estop the brewing company and its stockholders to assert that the conveyance was ultra vires. The brewing company received substantial benefits from the conveyance. The trust company paid $5,550 delinquent taxes, and thereafter paid $8,000 for taxes and insurance on the property. It surrendered its notes and released its mortgage and dismissed its foreclosure suit. It received no income from the property. United States F. & G. Co. v. Cascade Construction Co., 106 Wash. 478, 180 Pac. 463; Moore v. American Sav. Bank, 111 Wash. 148, 189 Pac. 1010.

[4] It is true that the execution of the conveyance was never formally authorized by the brewing company's board of directors. But it is clear from the evidence that the conveyance was subsequently ratified. At the February, 1918, meeting, at which all of the directors were present, they were advised that the mortgaged property had been conveyed to the trust company. At each of the meetings of the board thereafter the directors discussed the efforts that had been made to dispose of the property, and at the July, 1919, meeting, it was stated that the property of the company was to pass into the hands of the trust company on July 1, but that the latter had made no move to take

possession. At none of these meetings was there an expression of disapproval of the conveyance of the property.

[5] It is alleged in the complaint that as an inducement for the execution of the conveyance, the brewing company released Schade from his guaranty and secured to him and to his wife the right to the individual use of the conveyed property for a year and six months without rental. The agreement as to the use of the property was that during the lifetime of the option the brewing company might if it desired conduct on the premises a business of its own without rental, or that the Schades might personally operate a business in the bottling works. It was desirable, of course, that the conveyed property be occupied by some one during the existence of the option. The trust company apparently was content to have either the brewing company or the Schades occupy and use it. As a matter of fact, no use was made of it by either. We cannot discover, in the mere fact that such an agreement was made, evidence of fraud or of fraudulent inducement to the execution of the conveyance; nor do we think that fraud is to be inferred from the fact that Schade was released from the obligation of his guaranty. It was not his own debt that he had guaranteed. It was the debt of his corporation. In receiving all of the property of that corporation in payment of its debt, there was nothing improper in acquitting Schade of his personal obligation. The stockholders had no right to demand that Schade should pay the debt or any part thereof. As evidence of fraud, reference is made to what is claimed to be the gross inadequacy of the price at which the property was transferred, and it is contended that the property was worth $350,000. That estimate is obviously based upon the cost of the property and its value for use as a brewery prior to the time when prohibition destroyed its value for that purpose, and grossly impaired its value for any purpose. More convincing evidence of its true value is found in the failure of all efforts during a period of three or four years to raise money on the property or to sell the same for a sum sufficient to pay the obligations of the company.

[6] The prayer of the bill of complaint was that the agreement between the two corporations be set aside and declared null and void, and that the property be returned to the brewing company, subject to the rights of its creditors and stockholders. Neither in the pleadings nor on the trial was there any offer on the part of the appellants to return to the trust company any part of the money which it had paid out for taxes, insurance, and repairs. The appellants stand in no better position than would the brewing company in a similar suit. As was said by the court below:

"It should at least appear that either the corporation or the stockholders are ready and wiling to pay the amount due on redemption. No such readiness or willingness is averred in the pleadings, and no such readiness or willingness was disclosed at the trial. Counsel frankly conceded that the stockholders did not have the means to effect a redemption, and further conceded that if they had the means, it would not be deemed advisable to employ them in that way."

The decree is affirmed.