[Maben v. Gulf Coal & Coke Co., et al.]

# Maben *v.* Gulf Coal & Coke Co., *et al.*

*Bill by Stockholder to Declare Conveyance Null and Void.*

(Decided May 9, 1911.  55 South. 607.)

1. *Corporations; Sale of Assets; Power; Rights of Stockholders.*— In the absence of fraud, breach of duty or bad faith, minority stockholders were not entitled to avoid or invalidate a sale made by the majority stockholders of all the lands and minerals which constituted all the property of the corporation, on the ground that the corporation was thereby denuded, where it appeared that the corporation was authorized to rent or purchase mineral lands and to sell and lease the same.

2. *Same; Sale of Property; Effect; Franchise.*—A sale of all of a corporation's property does not necessarily terminate the corporation nor operate as a transfer of such corporate powers or franchises as it had.

APPEAL from Walker Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by J. C. Maben against the Gulf Coal & Coke Company and others, to annul and set aside a conveyance of the corporation's property in mineral lands. From a decree dismissing the bill on demurrer, the complainant appeals.  Affirmed.

TILLMAN, BRADLEY & MORROW, and L. C. LEADBEATTER, for appellant.  A corporation cannot divest itself of all its property in such a manner as to deprive it of the power to continue to exercise the corporate functions against the dissent of a single stockholder.—*Tillis v. Brown,* 45 So. 589; *Keen v. Johnson,* 9 N. J. E. 401; *Gabriskie v. Hackensack,* 18 N. J. E. 178.  The principle is analogous to that of the consolidation of the corporation against the dissent of the stockholder.— *McMahon v. Morris,* 79 Am. Dec. 424; *Botts v. Simpsonville Co.,* 10 S. W. 134; *Rabe v. Dunlap,* 25 Atl. 959.

It follows that the court erred in overruling the demurrers to the bill.

BROOKS & STOUTZ, for appellee Gulf Coal & Coke Company, BANKHEAD & BANKHEAD, for appellee Hanson and Empire Land Company. In the absence of fraud, bad faith, or breach of duty on the part of the majority of stockholders, the bill is without equity.—10 Cyc. 969; *Smith v. Prattville Mfg. Co.,* 29 Ala. 503; *Tuscaloosa Mfg. Co. v. Cox,* 68 Ala. 71; 53 Am. Dec. 624; 9 L. R. A. 530. The corporation had the power to acquire by purchase and lease, and to sell or rent the property acquired, and being a private corporation, could make the contract even to the extent of selling all its property.— *Woolf v. Underwood,* 91 Ala. 523; 10 Cyc. 1265 and 1302; 85 Am. Dec. 516; 99 Id. 300; 66Id. 490; Thompson on Corporations, sec. 5441; 114 Mass. 37; 45 L. R. A. 560.

MAYFIELD, J.—This bill was filed by appellant against appellees, seeking to have a certain conveyance, executed by the Gulf Coal & Coke Company to the respondant, Hanson, as trustee for the Empire Land Company, conveying all the lands and minerals belonging to the said Gulf Coke & Coal Company, decreed to be null and void and of no effect, and to have the legal title to the lands and minerals conveyed thereby declared to be in the said Gulf Coke & Coal Company, and to have the said company return to the said Hanson all the consideration received by it from the attempted sale. The complainant filed the bill as a stockholder of the Gulf Coke & Coal Company.

The equity of the bill is sought to be supported upon the contention that the lands conveyed constituted the entire holdings of the corporation (Gulf Coke & Coal Company) of which the complainant was a stockholder,

and that the corporation was thereby denuded of all its property and deprived of all means of carrying out the purposes for which it was organized; that the sale was not for the purpose of reinvesting the funds, but to terminate the existence of the corporation in that way, which was claimed to be in contravention of the laws made and provided in such cases.

The bill alleges that all of the members of the board of directors, except one, voted in favor of the sale and conveyance of the lands to Hanson as trustee, and that it would therefore be useless to appeal to the board of directors of the corporation for the redress sought by the bill. The bill avers that on July 5, 1906, the board of directors of the Gulf Coke & Coal Company passed resolutions authorizing and providing for a sale of all the lands and mineral holdings of the said company to Hanson, in consummation of the contract theretofore made to that end. All of the stockholders, except the complainant and L. B. and J. C. Musgrove, voted their stock in favor of the sale; 6, 876 shares being voted in favor of the sale, and 2,203 shares against it, and complainant owning 138 shares of those voted against the sale. The complainant, at the meeting of the stockholders, protested against the sale.

Among the powers and purposes of the corporation was that to rent or purchase known mineral lands and to sell or lease them. The corporation was organized under the general statutes providing for the organization of mining and manufacturing corporations, on December 22, 1887. It was given many powers besides those above mentioned.

The respondent, the Gulf Coke & Coal Company, demurrer to the bill, assigned grounds too numerous to be mentioned; but among them was the general demurrer that there was no equity in the bill. The cause was

heard on this demurrer, which was sustained by the chancellor, and from his decree thereon this appeal is prosecuted.

The proposition of law insisted upon by the appellant, and the theory upon which the bill was filed, is that a solvent corporation which is a going concern cannot, against the objection of a single stockholder, sell its entire property and thereby denude itself of the means and powers necessary to carry on the purposes for which it was organized.

We think the law upon this subject applicable to a corporation like the one in question, and to transactions or sales like the one involved in this suit, has not been better stated by any of the authorities than by that great justice, Bigelow, of the Supreme Court of Massachusetts, in the case of *Treadwell v. Salisbury Manufacturing Company*, 7 Gray, 393, s. c. 66 Am. Dec. 499. This case has been followed, if not quoted literally, by many text-writers on the subject. It is sustained by both the great weight of authority and the majority of the adjudicated cases. The law is so well stated in that decision, and is so in accord with our views on the subject in this case, that we shall quote it at length:

"We entertain no doubt of the right of a corporation, established solely for trading and manufacturing purposes, by a vote of the majority of their stockholders, to wind up their affairs and close their business, if in the exercise of a sound discretion they deem it expedient so to do. At common law the right of corporations, acting by a majority of their stockholders, to sell their property is absolute, and is not limited as to objects, circumstances or quantity.—Angell & Ames on Corp. § 127 et seq.; 2 Kent's Com. (6th Ed.) 280; *Mayor, etc., of Colchester v. Lowton*, 1 Ves. & B. 226, 244; *Binney's Case*, 2 Bland (Md.) 142. To this general rule there

[Maben v. Gulf Coal & Coke Co., et al.]

are many exceptions, arising from the nature of particu-
lar corporations, the purposes for which they were cre-
ated and the duties and liabilities imposed on them by
their charters.   Corporations established for objects
quasi public, such as railway, canal, and turnpike cor-
porations, to which the right of eminent domain and
other large privileges are granted in order to enable
them to accommodate the public, may fall within the
exception; but also charitable and religious bodies, in
the administration of whose affairs the community, or
some portion of it, has an interest to see that their cor-
porate duties are properly discharged.   Such corpora-
tions may, perhaps, be restrained from alienating their
property, and compelled to appropriate it to specific
uses, by mandamus, or other process.   But it is not so
with corporations of a private character, established
solely for trading and manufacturing purposes.   Neith-
er the public nor the Legislature have any direct inter-
est in their business or its management.   These are com-
mitted solely to the stockholders, who have a pecuniary
stake in the proper conduct of their affairs.   By accept-
ing a charter, they do not undertake to carry on the
business for which they are incorporated indefinitely,
and without any regard to the condition of their corpor-
ate property."

There are many recent cases to the same effect, to
wit:   "A corporation, while solvent and a going con-
cern, holds property like an individual, free from lien
or trust in behalf of its general creditors, and may dis-
pose of the same as it deems best, subject to the provi-
sions of its charter and those other restraints upon the
conveyance of property which the law imposes alike on
corporations and individuals."—*New Hampshire Sav-
ings Bank v. Richey*, 121 Fed. 956, 58 C. C. A. 294.   "A
corporation organized under the laws of West Virginia

has power, under the Code of West Virginia 1899, c. 53, §56, to sell and transfer all of its property and discontinue its business by the action of the holders of a majority of the stock, taken at a general stockholders' meeting."—*Metcalf v. American School Furniture Co.,* (C. C.) 122 Fed. 115. "A private corporation, unless restrained by statute, may legitimately deal with its property as an individual deals with his."—*Levering v. Bimel,* 146 Ind. 545, 45 N. T. 775. "Where the majority members of a corporation have sold its entire property, the sale will not be set aside at the instance of a minority stockholder on the sole ground that the corporation was doing a fairly good business, and that some of the stockholders did not consent to the sale."—*Tanner v. Lindell Ry.* Co., 180 Mo. 1, 79 S. W. 155, 103 Am. St. Rep. 534.

We think that the cases cited and relied upon by the appellant are not applicable to the case under consideration. The New Jersey case of *Kean v. Johnson,* 9 N. J. Eq. 402, is distinguishable from this case upon two grounds pointed out by Justice Bigelow in the Massachusetts case quoted from above. The New Jersey case involves a sale by a public service corporation of all its property and franchise rights, and also involved the construction of a New Jersey statute, which the court in that case held to expressly prohibit such sale without the consent of all the stockholders. This case is also distinguishable from the line of cases shown by the note in 79 Am. Dec. 424, relied upon by appellant. Those cases involved the rights and powers of two or more corporations to consolidate, without the assent of all the stockholders. This it was held, could not be done in the absence of a statute providing for such consolidation; and it was also held that stockholders could not be compelled, in this manner, to invest their capital in other

corporations against their protest, and thus be required by other stockholders to embark in new and different enterprises from those undertaken by the original corporation in which they had invested their money. The line of cases referred to hold that such consolidation might be authorized by the Legislature, provided compensation be made to the dissenting stockholders.

So far as appears from the record in this case, the Gulf Coke & Coal Company had never engaged in the business of mining or manufacturing, though authorized so to do under its charter. The only business shown to have been carried on by it during its lifetime of more than 20 years was the buying and selling of real estate. This being true, we can see no reason why it could not make the sale of its lands in question. It must be remembered that there was no attempt to allege fraud, duress, or overreaching on the part of the majority stockholders, directors, or other officers of the corporation. The equity of the bill seems to rest solely upon the lack of authority of the majority of the stockholders and directors to make a sale of the company's lands.

Under the facts as shown by this bill, and in the absence of allegation of violation of the charter powers of the corporation, or of fraud, neglect, breach of duty, or of bad faith, we find no ground upon which to rest the equity of this bill. A court of chancery should not usurp the direction of a private corporation at the instance of a man whose only complaint is one against the acts of the managers and of the majority of the stockholders, done in good faith, and which are authorized by its charter powers.—*Smith v. Prattville Co.*, 29 Ala. 503; *Tuscaloosa Mfg. Co. v. Cox*, 68 Ala. 71.

The sale of the lands in question would not have the effect of terminating or annihilating the corporation. A corporation may continue to exist after all its proper-

ty is gone. It was not a transfer of its corporate powers or of its franchise rights, if such it had. The particular property sold, though it was all the land owned by the corporation under its charter powers as shown by the bill, was not at all essential to the existence of the corporation.—*Miners' Ditch Co. v. Zellerbach*, 37 Cal. 543, 99 Am. Dec. 300. Mr. Thompson, in his work on corporations, vol. 3 (2d Ed.) § 2415, says: "A private corporation has power to sell and dispose of all its property, except its franchise of existence, without express authority from the Legislature." In section 2417 of the same book, he says: "A rule of general application is that a corporation of a purely private character, and one which owes no special duty to the public, when the exigencies of its business require it, or when the circumstances are such that it can no longer continue the business with profit, may sell and dispose of all of its property, pay its debts, divide the remaining assets, and wind up the affairs of the corporation."

For these reasons, and others which might be assigned, we are of the opinion that the decree of the chancellor is correct and should be affirmed.

Affirmed.

SIMPSON, MCCLELLAN and SOMERVILLE, JJ., concur.