JOSEPH A. BUTLER,

*vs.*

NEW KEYSTONE COPPER COMPANY, a corporation of the State of Delaware, SAM A. LEWISOHN, President of said corporation, J. PARKE CHANNING, Vice-President of said corporation, E. H. WESTLAKE, Secretary and Treasurer of said corporation, and SAM A. LEWISOHN, J. PARKE CHANNING, J. H. SUSSMAN, ADOLPH LEWISOHN, J. S. DUNSTAN, THEODORE L. HERRMAN, WALTER T. ROSEN, JACOB LANGELOTH and RALPH C. LUPTON, Directors of said corporation.

*New Castle, Feb.* 2, 1915.

Syllabus.

On bill for injunction not alleging that the officers of a corporation were acting in bad faith or with personal advantage to themselves in submitting to the stockholders a proposal to exchange the corporation's mining property for stock in another company, and where there was no evidence of inadequacy of consideration, the judgment of the directors as to the wisdom of the exchange, if legal, will not be reviewed.

Neither the directors nor the stockholders of a prosperous and going concern may sell all or substantially all of its property, if the holder of a single share dissents; but, if the business be unprofitable and hopeless, the holders of a majority of the stock may, against the dissent of the minority, sell all the property with a view to winding up the corporate affairs.

Under General Incorporation Act (22 *Delaware Laws, c.* 394) §3, and *section* 5, *par.* 8, providing that a certificate of incorporation may contain any lawful provision which the incorporators wish for creating and regulating its powers, and those of the directors and stockholders, where the charter of defendant company authorized it to deal in mines and shares of other corporations, and empowered the directors to sell less than its whole property on such terms as they deemed fit, without the assent of stockholders, and upon a vote of three-fourths of the capital stock, the directors, without collusion or any inadequacy of price, might exchange its mining property, which was without reduction machinery or good prospects, for stock in another mining company.

Such exchange did not constitute either a consolidation or merger of the two corporations, either in fact or in law, but each would continue its corporate existence, exercise its own franchise, and continue its business unaffected by the other.

Such exchange could not be enjoined on the theory that a distribution of the shares received was threatened which would constitute a winding up of the company in a manner not authorized by the General Incorporation Act; since such distribution was not directly involved in the proposed exchange, but was particularly denied, and it could not be presumed that the officers or directors would illegally distribute the shares received.

Such distribution would be illegal as a diminution of the capital of the company forbidden by General Incorporation Act, §35, declaring that dividends may be paid from the surplus or net profits from the business, but that the corporation shall not otherwise divide, withdraw, or in any way pay to the stockholders any part of its capital stock to reduce such stock.

A distribution of all the assets of a company, operating under the General Incorporation Act, would amount to a winding up, which could be done legally only by the method provided by law.

A corporation created to carry on the general business of mining with general charter powers to buy, sell and deal in mines, and own shares of stock of other corporations, and with a special charter power vested in the directors to sell, or otherwise dispose of, all or substantially all the property and assets of the corporation with the assent of the holders of three-fourths of all the stock, may with such assent sell substantially all its property and assets to another corporation and take in payment therefor shares of the purchasing corporation, even though some of the stockholders dissent, and the directors will not be enjoined from submitting to the stockholders the proposed sale.

The transaction does not constitute either a merger or consolidation, and no distribution among its shareholders could be made of the shares of stock to be received.

Injunction Bill.  A stockholder of the New Keystone Copper Company, a Delaware corporation, filed a bill in this court to perpetually enjoin a proposed sale of substantially all of the assets of the company to the Inspiration Consolidated Copper Company, a Maine corporation, in exchange for shares of stock of the latter company, and to prevent a distribution by the defendant company of its assets among its stockholders. The New Keystone Copper Company, one of the defendants, owns a copper mine in Arizona, which is still being developed by exploratory work to determine whether ore can be practicably and profitably mined, treated and marketed.  As yet the company has no plant for mining or reducing the ore.  The mine is located between two other copper mines owned by the Inspiration Consolidated Copper Company.  The directors of the defendant company having determined that it was unwise to further develop the mine, or provide a mining or reduction plant, made an agreement to sell all its assets, except the cash and securities in its treasury, valued at about fifty-seven thousand dollars, to the Inspiration Company in exchange for shares of the latter company.  Accordingly a special meeting of the stockholders of the defendant company was called for the purpose of acting on the proposed sale.  Accompanying the formal notice of the meeting, there was sent to the stockholders a letter from the president explaining the agreement and proposed sale and giving details as to the capital of the Inspiration Consolidated Copper Company.  It was also there stated that

the sale "will enable a distribution to each stockholder in the New Keystone Copper Company for each nine shares held by such stockholder of one share of the Inspiration Consolidated Copper Company," and further that the unsold cash and securities "will be available for distribution."

Believing from these statements that it was the purpose of the officers of the company not only to exchange the mine of the company for shares of stock of the other company, but also to make a distribution of the shares so to be received, and also to make a distribution of the cash and securities, thereby dividing all its assets, the complainant as a stockholder filed his bill to prevent the sale and distribution. It was alleged that the transaction would be in legal effect either a merger or consolidation, and however considered was unlawful and a legal fraud on the statutes of Delaware, and in fraud of the rights of the stockholder if he be compelled to accept an exchange of stock. Allegations were also made respecting the assets and financial standing of the Inspiration Consolidated Copper Company, and it was claimed that the basis of exchange was unfair and unjust, because of the relative resources and financial condition of the two companies.

Upon presentation of the bill the company was restrained from submitting to the stockholders' meeting the proposed sale pending the hearing of a rule for a preliminary injunction until the cause be heard in due course. By its answer filed before the hearing on the rule the defendant denied the allegations of the bill as to the purpose of the officers in making the exchange and as to a distribution, and alleged that by its charter the company could, with the assent of three-fourths of all the capital stock of the company, sell substantially all its assets, and had a right to make the proposed sale or exchange. The answer denied the allegations that the sale was unfair or unjust, and contained certain allegations as to the development and resources of the Inspiration Consolidated Copper Company. The defendant also filed affidavits as to the financial condition of the two companies.

The hearing was had on the bill and the answer and affidavits of the defendant as to the issuance of the preliminary injunction.

*Robert H. Richards*, and with him *Martin Paskus*, of New York City, for the complainant.

*Saulsbury, Morris and Rodney*, and with them *Samuel Untermyer*, of New York City, for the defendant company.

The CHANCELLOR (after stating the facts as above). By the charter of the defendant company, in addition to the general powers conferred on all corporations incorporated under the General Incorporation Act of Delaware (22 *Del. Laws, c.* 394), it acquired very broad powers. It could buy, sell and deal in mines, acquire by exchange of property and sell or otherwise dispose of and deal in shares of other corporations, and had other broad powers. Indeed it was almost broad enough to permit it to carry on any kind of business, except that of a public service corporation, anywhere perpetually. There was also this power particularly stated in the certificate of incorporation, being paragraph 2 of article 9:

"2. The directors shall have the power to sell, assign, transfer, convey and otherwise dispose of a part of the property, assets and effects of the corporation, less than the whole or substantially the whole thereof, on such terms and conditions as they shall deem fit, right and just, without the assent of the stockholders in writing or otherwise. But the directors shall not have the power to sell, assign, transfer, convey or otherwise dispose of the whole, or substantially the whole, of the property, assets, effects, franchises and good will of the corporation except with the assent in writing, or pursuant to the vote, of the holders of three-fourths of all the capital stock of the company issued and outstanding."

It is under these general and particular powers that the company claims the right to make the exchange.

Manifestly two separate main questions are raised, one respecting the right of the company to exchange its mine for shares of another company, and the other as to the right to distribute the shares when received, if such be the purpose. These questions are separate, for the exchange may be valid and the distribution invalid. There is the further question whether the proposed exchange and alleged purpose to distribute amount in legal effect to either a dissolution or merger.

At the outset it should be noted that there is no allegation,

or claim, .that the officers of the Keystone Copper Company were acting otherwise than in good faith, and with no personal advantage to themselves. Further, there is no evidence of inadequacy of consideration for the sale, or that the basis of the exchange was unfair or unjust. The judgment of the directors as to the wisdom of the exchange will not under such circumstances be reviewed.

First. As to the right of the company to make the exchange. The complainant claims, in the first place, that the above quoted paragraph of the certificate of incorporation (paragraph 2 of article 9) is contrary to the laws of this State; and secondly, that if it authorized a sale it does not validate an exchange. By paragraph 8 of section 5 of the General Corporation Law of Delaware, it is enacted:

"The certificate of incorporation may also contain any provision which the incorporators may choose to insert for the regulation of the business and for the conduct of the affairs of the corporation, and any provisions creating, defining, limiting and regulating the powers of the corporation, the directors and the stockholders, or any classes of the stockholders; provided, such provisions are not contrary to the laws of this State."

It is argued that at common law, which is part of "the law of this State," a corporation has no power to sell and dispose of its entire assets and corporate property, except by the unanimous vote of the stockholders, and that therefore under the above quoted provision of the Act it cannot acquire such right, because a provision in the certificate of incorporation giving that power or authority would be "contrary to the laws of this State." The right to take corporate powers is not enlarged by section 3 of the General Corporation Law, and the statement there made that "every corporation * * * shall possess and exercise * * * the powers expressly given in its * * * certificate under which it was incorporated," is subject to the proviso that such powers be not contrary to the laws of this State. Probably also section 3 refers to corporations existing at the time the Act was passed, or to such as were created by a special Act. In either aspect this

section 3 is unimportant. Baldly the contention is, that a corporation cannot under that Act acquire powers other than, or different from, those inherent in every corporation, and if at common law, and independent of statute, a corporation was denied a power it could not acquire it under the General Corporation Law, though the right to acquire such particular power be not expressly forbidden by statute. This forced and unnatural construction is unsound. It would rob the provision of all meaning, and would amount to saying that a corporation can under that provision take only such powers and rights as it would have had without so taking them. However, I do not consider that it is necessary to express an opinion on the question whether the latter part of the clause is valid or not. If that broad provision which authorizes a disposition, not only of all the assets of the company, but also its franchises and good will, does in legal effect permit a winding up of the company in a manner other than according to the provisions of the General Corporation Act prescribing a method of winding up the affairs of the corporation, it may, to that extent, be invalid. A corporation cannot under paragraph 8 of section 5 of the General Corporation Law take any powers, or rights, contrary to any general provision of the Act applicable to all corporations created thereunder.

There is no general rule applicable to all corporations under all circumstances, which prohibits the sale of substantially all of the property of the company without the unanimous consent of its stockholders. Public service corporations, charitable and religious bodies may be so limited, and so also may corporations created to carry on a particular enterprise. The general rule as to commercial corporations seems to be settled, that neither the directors nor the stockholders of a prosperous, going concern have power to sell all, or substantially all, the property of the company if the holder of a single share dissent. But if the business be unprofitable, and the enterprise be hopeless, the holders of a majority of the stock may, even against the dissent of the minority, sell all the property of the company with a view to winding up the corporate affairs. *Cook on Corporations,* (6th Ed.) §670; *Thompson on Corporations,* (2d

*Ed*) §§ 2421, 2424.  *See note in 35 L. R. A. (N. S.) 396*, where many cases are collected.

If, however, the charter provisions be broad enough to include such sale within the corporate purpose, it will be within the power of a majority of the stockholders to so sell, even against the protest of a minority of the stockholders.  *Maben v. Gulf, etc., Co.*, 173 *Ala.* 259, 55 *South.* 607, 35 *L. R. A. (N. S.)* 396; *Lange v. Reservation, etc., Co.*, 48 *Wash.* 167, 93 *Pac.* 208; *Traer v. Lucas, etc., Co.*, 124 *Iowa* 107, 99 *N. W.* 290.

In this case the directors of the New Keystone Copper Company, with the broad powers to buy, sell and deal in mines and take stock in other corporations, and owning only a mine and certain treasury assets, finding the mine a disappointment and that the further development of it would be unprofitable and unwise, agreed to dispose of it to another company, and desires to submit the agreement to its stockholders for their approval.  The company was incorporated, among other things, to buy, sell and deal in mines, and generally to carry on the business of mining.  It was not limited to any particular mine.  It is probable, then, that under these provisions and powers and circumstances the company had a right to sell against the protest of the minority of the stockholders.  With the proceeds it could still carry on the business for which it was organized.

The case of *Lange v. Reservation, etc., Co.*, 48 *Wash.* 167, 93 *Pac.* 208, is instructive.  The company, formed to buy, sell and deal in mines, bought a mine and expended money in developing it, but subsequently abandoned the effort to operate it profitably.  About four years later the directors agreed to sell it, and holders of more than two-thirds of the stock voted to ratify the contract, the others dissenting.  It was held that the sale could be made under such circumstances.  It was said by the court:

"It is the contention of the appellant that neither the trustees nor a majority of the stockholders of a corporation have power against the objection of minority stockholders to sell or otherwise dispose of the entire property of the corporation, where no necessity exists for such action, such as the payment of legitimate debts, the prevention of further

losses from a losing business, or such like causes. Unquestionably this was the rule of the common law as applied to a corporation organized to carry on a particular business, when such sale would have the effect of thwarting the purposes for which it was organized, and destroying the corporation itself, and especially was it true where the purposes of the sale were to 'freeze out' or otherwise deprive the minority stockholders from further participation in the profits of the business conducted by the corporation. *Theis v. Spokane Falls Gas L. Co.*, 34 *Wash.* 23, 74 *Pac.* 1004; *Parsons v. Tacoma Smelting & Refining Co.*, 25 *Wash.* 492, 65 *Pac.* 765.

"But in the case before us the sale does not disrupt the corporation, nor is it contrary to the purposes for which the corporation was formed. On the contrary, the corporation will be in as good a condition to proceed with the objects it was formed to promote after this sale as it was before, and the sale will be but fulfilling one of its objects and purposes. Whether the sale is wise or not from a business point of view is not the question. It is a question of power in the board of trustees. And this power exists, we think, both by virtue of the articles of incorporation, and the general law conferring the management and control of the corporate business on the board of trustees. *Pitcher v. Lone Pine-Surprise, etc., M. Co.*, 39 *Wash.* 608, 81 *Pac.* 1047."

Even if the clause of the charter empowering the directors to sell all or substantially all the assets, franchises and good will of the company with the consent of three-fourths of the stockholders be too broad in some respects, it is still valid to an extent sufficient to permit the directors to make the sale of the mine of the New Keystone Copper Company, though that be substantially all its property.

In *Traer v. Lucas, etc., Co.*, 124 *Iowa* 107, 99 *N. W.* 290, the corporation was organized to purchase, own and lease and sell mineral lands, and by its charter had a right to sell all its property, and also to deal in stocks of other corporations. It was held that it had a right to sell all its property for stock in another corporation. The court in the opinion said:

"The charter of a corporation formed under a general law consists of its articles of incorporation, taken in connection with the law under which the organization takes place. The provisions of the law enter into and form a part of its charter, and the charter, thus construed, contains the 'terms of the agreement of the association between the shareholders, and indicates the character and extent of the buisness in which the company shall engage.' 1 *Morawetz on Private Corporations*, §318; *Cook on Corporations* (5th Ed.) §669.

"When a person becomes a shareholder in a corporation, he assents to the transaction of the business expressly or impliedly authorized by its charter; and therefor, if the charter authorizes the sale or other disposition of all of its property, he cannot complain.   It is a well settled rule that a strictly private corporation has the same right to dispose of its property that an individual has, and that, when insolvent or in a failing condition, it may sell all thereof without the consent of all of the shareholders   *   *   *.   It is the general rule, however, that 'neither the directors nor a majority of the shareholders of a corporation have power at common law to sell or otherwise transfer all of its property while the corporation is a going, prosperous concern,   *   *   *   as against the dissent of any shareholder.'   *   *   *   It is undoubtedly the general rule, that a corporation may not sell any part or all of its property for other than a cash consideration, unless authorized so to do by its charter.   Here no cash was to be paid by the purchasing corporation, and no other consideration than its stock, and it had no property other than that purchased of the Lucas Company.   But the articles of incorporation expressly gave the Lucas Company the right to purchase, sell and deal in the corporate stocks of corporations authorized to conduct mining operations.   It had mining rights and property for sale, but no power to mine; hence, we think the power to exchange or sell its properties for the stock of a corporation which would engage in the business, clearly implied.   Indeed, we have held that a trading corporation, unless prohibited by its charter, may buy and sell the stock of another corporation.   *   *   *   The Lucas Company having the power to sell and transfer all of its property, and the power to purchase the stock of another corporation, it follows that it had the power to so invest all of its property.   *Franklin Co. v. Lewister Savings Bank*, 68 *Me.* 43; *Treadwell v. Salisbury. Mfg. Co.*, 7 *Gray* 393; *Booth v. Robinson*, 55 *Md.* 419.   *   *   *

"It is said, also, that the transaction in question amounts to a consolidation of the two corporations, and that, if upheld, it virtually compels the plaintiff to enter a corporation with greatly enlarged powers, and subjects him to liabilities which he did not undertake to assume; in other words, that it makes a new contract for him.   There is nothing in the transaction which prohibits the Lucas Company from still prosecuting the business for which it was organized,   *   *   *   *."   See also, *Lange v. Reservation, &c., Co.*, 48 *Wash.* 167, 93 *Pac.* 208.

The terms of the agreement under which the shareholders combined for the common enterprise are to be found in the general Act under which the corporation was formed and in the certificate of incorporation, and include any valid special powers contained in the latter.   If by these terms a power is given to the directors to sell substantially all the property of

the company with the assent of holders of three-fourths of the shares, every one who takes shares is bound by that provision, if it be exercised in good faith. In this case, then, the complainant cannot complain that the directors are submitting to the stockholders a proposition under the above provisions, or prevent their consummating the transaction, if holders of three-fourths of the stock agree to the proposed sale.

I further hold, that having a right to sell and dispose of substantially all its assets, the agreement to take shares of the other company therefor was not invalid. See quotation above from *Traer v. Lucas, etc., Co.*, 124 *Iowa* 107, 99 *N. W.* 290.

In *McCutcheon v. Merz Capsule Co.*, 71 *Fed.* 787, a Michigan company sold all its property to a New York corporation under circumstances which the court found to constitute practically a consolidation of the two organizations. Judge Lurton said, however:

"By the agreement of November 29, 1893, which we are asked to sanction and specifically enforce, the Merz Capsule Company contracted, not only to sell its entire manufacturing plant, including patents, processes, and goodwill, to the new corporation, when organized, but that it would never again engage in the same business. If its purpose had been in good faith to wind up its affairs, and distribute the price to be paid among its stockholders, or to convert the same into money for purposes of distribution, the transaction might be supported under the authorities heretofore cited, although payment was to be received in the stock and bonds of the new company. The implied power to wind up its business and to make a sale of its property would probably authorize a sale for stock in another corporation."

The New Keystone Copper Company had power to sell substantially all its property, and also to purchase shares of stock of another company, and it follows that it had the power to exchange its property for stock. I am clear that the transaction of exchanging the mine for shares of the other company did not constitute either a consolidation or merger of the two corporations, either in fact or in law. Each company will continue its corporate existence. The purchasing company will have the mine of the selling company, and the latter will hold a certain number of shares of the former. Each has its own

franchises and property, and can continue business separately and unaffected by the other.    It was not an exchange of stock of one company for stock of the other, as was the case in *Riker v. United Drug Co.*, 79 *N. J. Eq.* 580, 82 *Atl.* 930, cited by and much relied on by the complainant.    The Inspiration Consolidated Copper Company acquired no control over the New Keystone Copper Company by the purchase of the mine and other assets of the latter company, and the New Keystone Copper Company did not obtain control of the other company. In the case cited it was considered important as showing in legal effect, and in its ·essence, a consolidation, that by the exchange of stocks between the two corporations, the purchasing company obtained control of the other company, and for the purpose of managing its business in concert with other allied corporations.

Secondly.    I am convinced that the complainant is not entitled to enjoin the consummation of the exchange of the mine for the stock, based on the theory that a distribution of the shares of the Inspiration Consolidated Copper Company was threatened, and that that would constitute a winding up of the company in a manner not authorized by the General Corporation Act.    This distribution was not involved directly in the matter to be voted on by the stockholders, who had notice of a meeting to act on the proposal of sale.    The statements of the president in his circular that this sale would permit a pro rata distribution in certain proportions and that the treasury assets would also be available for distribution, though perhaps misleading, did not show a plan to make an immediate distribution.    If such had been, or is, the purpose, it is illegal for two reasons: (1) It would be a diminution ·of the capital of the company, which is forbidden under section 35 of the General Corporation Act.    By it, dividends may be paid from the surplus, or net profits arising from its business, "but otherwise the corporation shall not divide, withdraw or in any way pay to the stockholders, or any of them, any part of its capital stock, or reduce its capital stock."    By this section the division of the actual capital or assets is prohibited.    It also forbids, as a separate matter, a reduction of the share capital or authorized

BUTLER vs. NEW KEYSTONE COPPER CO., ET AL. 383

Opinion.

capital, except it be done in the manner authorized. *Goodnow v. American, etc., Co.*, 73 *N. J. Eq.* 692, 69 *Atl.* 1014; *Excelsior, etc., Co. v. Pierce*, 90 *Cal.* 131, 140, 27 *Pac.* 44. (2) A distribution of all the assets would clearly be a winding up which could legally be done only in the method provided by law.

It cannot be assumed, from the facts now before the court that the officers or directors of the company will do this illegal act, and in the answer the intention to do so is denied; and they should not be prevented from doing a thing now lawful to be done, because in the future they may do something else which may not be lawful, in the absence of evidence of a threat to do both as part of one plan, and in the face of a denial of the existence of such plan.

Stated succinctly, I hold, therefore, in this case that a corporation created to carry on the general business of mining, with general charter powers to buy, sell and deal in mines, and own shares of stock of other corporations, and with a special charter power vested in the directors to sell, or otherwise dispose of, all or substantially all the property and assets of the corporation with the assent of the holders of three-fourths of all the stock, may with such assent sell substantially all its property and assets to another corporation and take in payment therefor shares of the purchasing corporation, even though some of the stockholders dissent, and the directors will not be enjoined from submitting to the stockholders the proposed sale.

The transaction does not constitute either a merger or consolidation, and no distribution among its shareholders could be made of the shares of stock to be received.

In conclusion, then, the motion for an injunction to prevent the submission to the stockholders for their action thereon, the proposed sale to the Inspriation Consolidated Copper Company of certain property of the New Keystone Copper Company to be paid for in certain shares of the former, or the submission of any resolution, or other measure, providing for such proposed sale, or to prevent the company from taking any other action to further consummate the proposed transfer, should be denied. Inasmuch, also, as the shares of the Inspira-

tion Consolidated Copper Company cannot be lawfully distributed without further corporate action, and none appears to be contemplated, the complainant does not now need the protection of the preliminary injunction to prevent a distribution.

The preliminary injunction being refused, the restraining order will be dissolved.