33 So.2d 904

### AUTAUGA CO-OPERATIVE LEASING ASS'N v. WARD.

3 Div. 486.

Supreme Court of Alabama.

Jan. 22, 1948.

Rehearing Denied Feb. 19, 1948.

Wm. S. Duke, of Montgomery, for appellant.

Steiner, Crum & Weil, of Mongomery, and Pettus, Fuller, Reeves & Stewart, of Selma, for appellee.

FOSTER, Justice.

The appellee, complainant in equity, is seeking to exercise an option granted in a lease dated March 1, 1940, by W. A. Gunter and wife to the Autauga Co-operative Leasing Association, a corporation. Complainant claims under an alleged assignment of the option.

The corporation is alleged in the bill to have been organized under section 7046, Code of 1923, section 168, Title 10, Code of 1940. No stock was issued nor authorized by law, and its purpose as expressed is "to rehabilitate and render self-supporting the families of its members, by assisting or participating in the establishment, development and maintenance of farms, homes and other facilities, including necessary or appropriate co-operative and community facilities and enterprises, for such families within the community at the Autauga Co-operative Leasing Association farms at Fay's Bend, County of Autauga, State of Alabama, and to do and perform all acts and things necessary, convenient and useful or incidental to the accomplishment of this purpose"; and, further, "to co-operate with any governmental agency or agencies, whether national, state, county, or municipal, or with any public or private agency whatsoever, in the purchase, construction, equipment, operation, maintenance or supervision of any understanding of this association designated to effectuate the purpose herein set forth."

That its primary purpose was to place itself in position to obtain the benefits of the law and plan of the United States to aid and assist the tenant farmers throughout the country: all the incorporators were Negroes, tenant farmers residing on the plantation leased by Mayor Gunter with the option to purchase. On March 30, 1942, the association mortgaged all its rights under the lease and option to the United States to secure a loan of $8,600. On September 14, 1944, it is alleged a meeting of the members of the association was held, and a certified copy of the minutes is attached. They show that all the members of the association were present (there being seventeen of them), that its indebtedness to the United States is not paid, and that it has certain personal property as well as the lease and option contract, and expresses a desire that its assets be sold and the proceeds applied to said indebtedness, and authorized a sublease, without the option to buy, to one Johnson, to be executed by the present county Farm Security Administration supervisor for Autauga County, or his successor. It also authorized a voluntary liquidation of its assets and business to be effected by said supervisor; and it was further resolved as follows: "Be it further resolved that said John R. Hargis, during his continuance in office or his successor, be and he is hereby authorized to seek a purchaser or purchasers of the lease with option to purchase executed by W. A. Gunter and Julia S. Gunter and this association and to assign and transfer for and on behalf of this association said lease with option to purchase to such purchaser or purchasers."

A waiver of notice of that meeting was signed by seventeen persons declaring that they were all the members of the association. On the same day a meeting of the directors was held adopting a resolution in the same language.

The bill alleges that on May 9, 1946, an assignment to complainant of said option right was made by the association, acting by James K. Holmes, the then county supervisor, for a consideration of $2,055 paid, and applied as a credit on the indebtedness of the association to the United States.

The bill then alleges that the Gunters and the association by an instrument dated November 5, 1946, without notice to complainant, undertook to abrogate the assignment to complainant and to declare said lease and option cancelled and terminated, without affecting the rights of Johnson as sublessee.

There were demurrers to the bill as amended by the association and by the Gunters, which were overruled. The association alone appeals, and assigns errors.

The chief question is whether the assignment of the lease to complainant was valid and passed to him the right to exercise the option to purchase. The contention is that it amounted to a sale of the en-

tire property of a private corporation without a compliance with section 91, Title 10, Code of 1940. That statute is as follows: "The entire property of a private corporation may be sold, exchanged, or bartered for other property, or otherwise disposed of when authorized by a vote of two-thirds of the board of directors and subsequently ratified by a vote of the holders of four-fifths in value of the capital stock of such corporation at a stockholders meeting called to consider the matter. Ten days' notice of such stockholders meeting shall be given in writing prior thereto and the purpose for which the meeting is called shall be stated in the notice."

The statute had its origin in an Act of April 21, 1911, Acts 1911, page 564. Prior to the enactment of it, corporations in the sale of their entire property were controlled by three principles. (1) If it is a solvent going concern, it could not sell all its property without the unanimous consent of all its stockholders; but could do so by such consent. Elyton Land Co. v. Dowdell, 113 Ala. 177, 20 So. 981, 59 Am.St. Rep. 105; Morris v. Elyton Land Co., 125 Ala. 263, 28 So. 513; Tillis v. Brown, 154 Ala. 403, 45 So. 589. (2) If it was insolvent or in failing condition, the directors or a majority of its stockholders could sell all its property without any special procedure. 13 Am.Jur. 923, note 16; Oskaloosa Savings Bank v. Mahaska County State Bank, 205 Iowa 1351, 219 N.W. 530, 60 A.L.R. 1204; note 5 A.L.R. 932. (3) If it was a trading corporation, the directors could authorize such a sale without all the stockholders agreeing. Maben v. Gulf Coal & Coke Co., 173 Ala. 259, 55 So. 607, 35 L.R.A.,N.S., 396.

■ The statute certainly had as the main purpose a loosening up of the restrictions requiring all the stockholders to agree to a sale of all the property of a going concern. Forsyth v. Alabama City, C. & A. R. Co., 207 Ala. 488, 93 So. 401. Whether it makes the procedure a requirement in respect to a corporation which is insolvent or one of a trading sort, so that the directors must pursue that course if they are proposing to sell all its property without the consent of all the stockholders, is not here material. While this appellant, by virtue of section 7046, Code of 1923 and section 168, Title 10, Code of 1940, may be similar in some respects to the one treated in the Maben case, supra, we are clear that it was not intended in respect to any corporation to restrict the power to sell by the unanimous consent of all its stockholders, or those interested in it, conveying all its property.

■ The restrictions of section 91, Title 10, supra, are to be construed on similar principles to section 70 (3), Title 10, Code, in respect to mortgaging the real property of a corporation. Both provisions are operative in their respective field. Boger v. Jones Cotton Co., 234 Ala. 103, 173 So. 495. It was held in Hillcrest Land Co. v. Foshee, 189 Ala. 217, 66 So. 478, that the provisions of section 70, supra, do not prevent all the stockholders from authorizing a mortgage by a procedure different from that provided for in that statute. The property of a corporation is in equity treated as owned by the stockholders, and they can do what they please with it by unanimous act, so long as the rights of others than the corporation are not infringed. First National Bank of Gadsden v. Winchester, 119 Ala. 168, 24 So. 351, 72 Am. St.Rep. 904; 13 Am.Jur. 1112, section 1215.

■■ We do not think that section 91, Title 10, supra, applies to a nonprofit corporation without capital stock, organized under section 168, Title 10, supra; but, even so, we think, as we have said, that any corporation can sell all of its property by the unanimous consent of all of those who belong to the organization.

■ The resolution adopted by the members recites that it was by unanimous consent. Section 91, Title 10, supra, is for the benefit of stockholders, and it is only they who may claim benefits on account of its nonobservance, not the corporation itself, nor one who stands in its rights, Boger v. Jones Cotton Co., 234 Ala. 103, 173 So. 495; Stuart v. Holt, 198 Ala. 73, 73 So. 390; Hillcrest Land Co. v. Foshee, 189 Ala. 217, 66 So. 478, 479; West Point Mining & Mfg. Co. v. Allen, 143 Ala. 547, 39 So. 351, 111 Am.St.Rep. 60, 5 Ann.Cas. 532; Nelson v. Hubbard, 96 Ala. 238, 11 So. 428, 17 L. R.A. 375. "If they acquiesce, others (the

corporation) cannot complain." West Point Mining & Mfg. Co. v. Allen, supra [143 Ala. 547, 39 So. 352]; Nelson v. Hubbard, supra. Having once acquiesced, they are estopped to claim to the contrary. Hoene v. Pollak, 118 Ala. 617, 24 So. 349, 72 Am. St.Rep. 189.

The bill does not specifically allege that all the persons interested in the corporation authorized the assignment of the lease and option, but it attaches as an exhibit a certified copy of a resolution, and of a waiver of notice, which recite that all the members of the association were present and waived notice, and that the resolution was "unanimously ratified and adopted by the members." That became an allegation of the bill. Equity Rule 11, Code 1940, Tit. 7, Appendix; Minter v. Branch Bank, 23 Ala. 762, 58 Am.Dec. 315; Clements v. Clements, 200 Ala. 529, 76 So. 855; Pool v. Menefee, 205 Ala. 531, 88 So. 654; Wells v. Wells, 249 Ala. 649, 32 So.2d 697.

That resolution, as we have stated, authorized the county Farm Security Administration supervisor of the Farm Security Administration "to assign and transfer for and on behalf of this association said lease with option to purchase to such purchaser or purchasers." The assignment to complainant refers to said resolution as the authority of the county supervisor to execute it on behalf of the association. It is alleged that the assignment was duly recorded in the probate office of Autauga County.

There is also attached as an exhibit to the bill, a copy of an instrument dated November 5, 1946, purporting to be executed by the Gunters and the association acting by John Lee Palmer, its president, whereby the Gunters are released from its obligations, and the lease is cancelled as of that date, and stipulating that possession be delivered to the Gunters on January 1, 1947.

But if the lease had theretofore been effectually assigned to complainant, of which the Gunters had notice, it could not later be cancelled by the original parties to it so as to affect the rights of the assignee. Chattanooga F. & P. Works v. Hembree, 117 Ala. 295, 23 So. 38.

Appellee also insists that the assignment of the lease purports to have been executed by an agent of the corporation, and that makes out a prima facie case of its due execution, and the burden is on one who would attack it to show an absence of authority by the agent. But the rule is, that it is not only to be thus signed, but (1) it must appear that the act of the agent was authorized, or has been ratified or acquiesced in by the corporation, Alabama & T. R. R. Co. v. Kidd, 29 Ala. 221; Talladega Ins. Co. v. Peacock, 67 Ala. 253; City Council of Sheffield, City Council v. Harris, 101 Ala. 564, 567, 14 So. 357; or (2) that the corporate seal was attached. Thorington v. Gould, 59 Ala. 461; Amerson v. Corona Coal & Iron Co., 194 Ala. 175, 179, 69 So. 601; Graham v. Partee, 139 Ala. 310, 315, 35 So. 1016, 101 Am.St.Rep. 32; American Savings & Loan Ass'n v. Smith, 122 Ala. 502, 27 So. 919; Jinwright v. Nelson, 105 Ala. 399, 405, 17 So. 91; Hill Co. v. Taylor, 232 Ala. 471, 168 So. 693.

Section 106, Title 47, Code, does not require the fixation of a seal, but it does not include a purported execution by an agent, but only by certain named officers of the corporation. As originally enacted, it applied only to real property. The Act of February 20, 1911, General Acts 1911, pp. 31–32, as brought into the Code of 1923, applies to all property,—section 6862,—as it does in the present Code. Without this enactment a similar principle applies when the corporate seal is alleged in the instrument to have been affixed by an officer or agent designated as such and with the seal of the corporation affixed. Graham v. Partee, supra, 139 Ala. 315, 35 So. 1016, 101 Am.St. Rep. 32; Amerson v. Corona Coal & Iron Co., supra, 194 Ala. page 179, 69 So. 601; Jinwright v. Nelson, supra, 105 Ala. page 404, 17 So. 91.

The instrument must declare in its body that its corporate seal is affixed to make the seal effectual. Dawsey v. Kirven, 203 Ala. 446, 449 (14 and 15), 83 So. 338, 7 A.L.R. 1658; Breitling v. Marx, 123 Ala. 222, 26 So. 203. When that is done, and it purports to have a seal on it, the principle applies though the person who executes it

is described as an agent. Amerson v. Corona Coal & Iron Co., supra. The use of the word "seal" is sufficient when the instrument recites that it is executed under the corporate seal. 19 Corpus Juris Secundum, Corporations, § 1026, notes 34 and 36; Dawsey v. Kirven, supra; Breitling v. Marx, supra.

The attestation clause in the assignment to complainant is as follows:

"In witness whereof, I have hereunto executed the said transfer and assignment, for and on behalf of said corporation, and affixed my hand and seal this the 9th day of May, 1946.

    "Autauga Co-operative Leasing
                    Association,
by (signed) James K. Holmes (Seal),
          James K. Holmes,
      County Supervisor, Farm Security
        Administration, United States
        Department of Agriculture."

It was duly acknowledged before a notary public, reciting that he acted as agent of the corporation and with full authority, substantially in the form required by law for corporate acknowledgments. Section 30, Title 47, Code. It will be noted that the attestation clause does not declare that the corporate seal is attached, but his seal. Whether that is sufficient to make it prima facie self-proving is not here controlling, for even if it be so both the bill and the assignment itself set out details as to how and by what procedure the person signing as agent acquired his authority. Therefore if such procedure is not sufficient under applicable law, the presumption from the use of the seal would be rebutted. We think that the recitals of the bill and of the resolution dated September 14, 1944, and of the waiver of notice, to which we have referred, altogether constitute allegation sufficient on demurrer to show that the association by and with the approval of all its members authorized Holmes as its agent to execute the assignment of the lease and option, though that was all the property it owned; and also sufficient to satisfy the statute of frauds in respect to the authority of Holmes as the agent of the association. Hoene v. Pollak, supra; Standifer v. Swann & Billup, 78 Ala. 88.

We cannot agree with appellant's contention, and the decree overruling the demurrer is affirmed.

Affirmed.

GARDNER, C. J., and SIMPSON and STAKELY, JJ., concur.