Hiles v. C. A. Hiles & Co.

---

## Theron L. Hiles v. C. A. Hiles & Company, et al.

### Gen. No. 11,972.

1. BILL OF COMPLAINT—*when should not be dismissed.* A demurrer admits that the properly pleaded facts of the bill are true, and if from those facts it appears that the plaintiff is entitled to equitable relief, a demurrer should be overruled and the bill should not be dismissed.

2. STOCKHOLDERS' MEETINGS—*when regularity of calling of, cannot be questioned.* A stockholder who has appeared at a stockholders' meeting and voted and protested thereat, cannot subsequently question the regularity of the calling of such meeting.

3. CONSOLIDATION—*what does not constitute.* Where one corporation sells to another its tangible property, including its good-will, retaining its franchise, its stockholders, and a considerable amount of assets, and receiving the consideration arising as a result of the transaction, a sale and not a consolidation is effected.

4. PURCHASE AND SALE—*when within powers of corporation.* One corporation may lawfully purchase of another its entire tangible property.

5. PURCHASE AND SALE—*what valid consideration for, made between corporations.* One corporation may purchase of another its entire

tangible assets and give a part of its capital stock in consideration therefor.

6. PURCHASE AND SALE—*when, between corporations, valid, notwithstanding they have common director.* The mere fact that one corporation purchasing from another its entire tangible assets has a common director with such other, does not affect the validity of the transaction, especially where it does not appear that the respective boards of directors of such corporations passed upon the transaction.

Injunctional proceeding. Appeal from the Circuit Court of Cook County; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed May 29, 1905.

**Statement by the Court.** The amended bill of appellant upon general demurrer was dismissed by the Circuit Court for want of equity. Thereupon he appealed to this court.

The bill sets up that in 1878 appellant and his father entered into partnership in the business of repairing and selling saws; that in 1882 his brothers were taken into the firm, and the business was enlarged by engaging also in the manufacture of saws; that in 1892 the business was incorporated, with a capital stock of $20,000, the company having no liabilities except a $3,000 mortgage on its real estate; that afterwards its capital stock was increased to $35,000; that of this increase $5,000 was sold to James A. Patton for cash, and $10,000 was kept as treasury stock; that in 1903 the accumulated assets of the corporation was more than $12,265; that the stock was distributed as follows: C. A. Hiles (the father), 44 shares; Henry B. Gates, 49 shares; G. F. Hiles, 41½ shares; Henrietta E. Hiles, 15 shares; James A. Patton, 50 shares; Elmer K. Hiles, 1 share; Thomas S. Hiles, 10 shares; appellant, 39½ shares; and 100 shares remained as treasury stock; that in January, 1903, Thomas S. Hiles commenced to collude with the officers and agents of the American Saw & Knife Works, an Illinois corporation, to consolidate the two corporations; that in furtherance of this purpose Thomas S. Hiles secretly showed the books of the C. A. Hiles & Co. to the officers of the other corporation; that the American Saw &

Knife Works was not prosperous and had been offering to sell its entire business for $10,000; that the scheme was to consolidate the companies upon a basis of $17,000 valuation for the assets of the American Saw & Knife Works; that early in 1903 Thomas S. Hiles, for the purpose of furthering said scheme, obtained from C. A. Hiles, the president of the C. A. Hiles & Co., then a resident of California, authority to call a meeting of the stockholders of that company for the purpose of considering such consolidation proposition, contrary to the by-laws, which provided that in the absence of the president the vice-president should be acting president; that C. A. Hiles authorized James A. Patton to represent his stock at said meeting; that about June 1, 1903, said meeting was held, at which the proposition to consolidate was rejected by a vote of all the stockholders of the C. A. Hiles & Co., except the ten shares held by Thomas S. Hiles; that thereafter, and for the purpose of effecting said consolidation, Thomas S. Hiles, without authority, called a meeting, purporting to be the annual meeting of the stockholders of the C. A. Hiles & Co., to be held June 15, 1903, for the purpose of electing a board of directors and of considering a proposition to purchase the property of the American Saw & Knife Works; that before said meeting Thomas S. Hiles transferred one share of the stock of the C. A. Hiles & Co. to each of the directors of the American Saw & Knife Works to enable them to vote at said meeting; that at said meeting Thomas S. Hiles, Stewart M. Gunderson and Fred. S. Nichols procured themselves to be elected as directors of the C. A. Hiles & Co., and Thomas S. Hiles was elected as president and treasurer and said Gunderson as secretary thereof, against the protest and vote of appellant and of said Henry B. Gates; that said meeting was then adjourned to June 18, 1903; that at said adjourned meeting only 116½ shares of the stock of the C. A. Hiles & Co. were represented, being less than the majority of such stock; that appellant was not present at such meeting, but was represented there by counsel, who objected to the same being held; that at such

meeting the alleged proposition to purchase all the assets, business and good-will of the American Saw & Knife Works was consummated; that immediately thereafter the American Saw & Knife Works pretended to convey all its machinery, good-will and assets to the C. A. Hiles & Co., and the latter company assumed all the liabilities of the former company, in accordance with the said pretended scheme of purchase and sale, and a resolution was passed by directors Thomas S. Hiles, Gunderson and Nichols, to pay to George O. Gunderson, president of the American Saw & Knife Works, twenty shares of the stock of the C. A. Hiles & Co. as earnest money and part purchase price, and a resolution was adopted ratifying such purchase and payment; that since said meeting the business of both corporations has been carried on under the name of the C. A. Hiles & Co.; that since said consolidation the business arising and growing out of the interests of the American Saw & Knife Works has involved the C. A. Hiles & Co. in an indebtedness of $2,000 during the months of July and August, 1903; that the entire business of the consolidated company is insolvent; it has entered into long term leases and has paid debts of the American Saw & Knife Works in the sum of $5,000, and has paid $500 in attorney's fees contracted in and about said consolidation, and has paid large salaries, none of which were authorized by the C. A. Hiles & Co., and has borrowed large sums of money, to-wit, $2,000; that immediately after such consolidation appellant made objection as a stockholder, and made a demand upon the consolidated company to furnish him ample security for his stock, and that he be paid the full value of his stock, and that after such consolidation Thomas S. Hiles, Gunderson and Nichols issued to said George O. Gunderson, president of the American Saw & Knife Works, the entire balance of the treasury stock, namely, $8,000, in addition to the $2,000 of such stock theretofore issued to him.

The prayer of the bill is for an injunction; that the election of Stewart M. Gunderson, Thomas S. Hiles and Fred

S. Nichols be set aside; that the consolidation alleged to be a purchase be set aside; that the issue of said treasury stock be canceled, and that all moneys paid for counsel fees be refunded, and for general relief.

It also appears by the bill that at and before the meeting of June 15, 1903, the directors of the C. A. Hiles & Co. were C. A. Hiles, Theron L. Hiles, Elmer K. Hiles, Thomas S. Hiles and Henry B. Gates; and that the officers thereof were C. A. Hiles, president; Theron L. Hiles, vice-president, and Elmer K. Hiles, secretary. That at said meeting the following directors were elected: Stewart M. Gunderson, Fred S. Nichols, Theron L. Hiles, Thomas S. Hiles and Henry B. Gates, and Thomas S. Hiles was elected president and Stewart M. Gunderson as secretary.

The proposition for the proposed consolidation of the two corporations, which appellant alleges was rejected by the stockholders of the Hiles Co., is attached to the bill as an exhibit. It sets out in an alluring manner and very much in detail the saving that would be made in the production and in the sale of saws and knives by a combination of the two plants into one company and under one management.

After the rejection of the consolidation proposition, as is shown by the bill, the American Saw & Knife Works offered to sell its assets to the Hiles Co. This offer, except the address and signature, is as follows:

"GENTLEMEN: We hereby propose to sell to you our machinery, tools, implements, etc., of every description, good-will and book accounts and bills and notes receivable and entire business, subject to payment by you of bills, accounts and notes payable for merchandise, material, etc., for a consideration to be arrived at by an inventory and appraisement to be made of all our tangible property on a fair and equitable basis.

We would suggest the appraisement be made by one party selected by us, and one party to be selected by you, and if they cannot agree, a third party to be agreed upon by the appraisers, to be umpire, and his decision to be irrevocable.

The settlement for the above is to be made at your option

either in cash or by $10,000 of treasury stock of your company, fully paid, and the balance of excess above $10,000 to be paid by notes of your company due on or before one year, with the        in the event of your increasing the capital stock of your company or taking up any of said notes by said stock at par as shall        be fully paid.

It being thoroughly understood and agreed that the accounts and bills receivable of both companies are to be guaranteed, and that the bills and accounts payable of your company shall not exceed the bills and accounts receivable in any event more than $1,500."

P. R. BARNES, for appellant; JOHN N. SWARTS, of counsel.

BROWNING & SHEPARD, for appellees.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

The demurrer admits that the properly pleaded facts of the bill are true; and if, from those facts, it appears that appellant is entitled to equitable relief, the demurrer should have been overruled, and the bill should not have been dismissed. Women's Catholic Order v. Haley, 86 Ill. App. 330; Langlois v. McCollom, 181 Ill. 195.

It is admitted by counsel for appellees that, if the acceptance of the proposition of a sale was a consolidation, and not a purchase and sale, then the statute was not complied with, and, therefore, unless there was a ratification by the Hiles Company or laches upon the part of appellant, the bill was not demurrable.

It does not require the citation of authorities to establish the proposition that after appellant had appeared at the meeting of the stockholders of the Hiles Company and had voted and protested as a stockholder and as a director against the action of the majority of the stockholders and directors there assembled, he will not be heard to say that such meeting was irregularly called.

The meeting of June 15, 1903, was adjourned until the 18th day of the same month. It is alleged that at such adjourned meeting a majority of the stock of the Hiles Com-

pany was not represented. An adjourned meeting of a regular meeting may transact lawful business without reference to the number of those who attend.

·It is true that many times in the bill the transaction complained of is called a consolidation. But calling it a consolidation does not make it so. Its character must be determined by the facts appearing upon the face of the bill. Appellant alleges that at the June 1, 1903, meeting, the proposition for a consolidation of the two corporations was rejected. Following that rejection, and at the meeting of June 18, 1903, the American Saw & Knife Works made to the Hiles Company a proposition, which appellant alleges was a proposition " to 'sell the machinery, tools, implements, good-will and the entire business of the American Saw & Knife Works to the said C. A. Hiles & Company." It will be noted that this proposition does not include the sale of the stock of the American Saw & Knife Works, nor does it purport to be a consolidation proposition. It is manifest that if carried out, the latter company is stripped of its tangible property, but it would still have on hand the consideration received as an equivalent for its property and business.

In the case of C., S. F. & C. Ry. Co. v. Ashling, 160 Ill. 373, cited by appellant, the main contention was whether or not the St. Louis Railway Company had been consolidated with the Santa Fe Company. In considering this question the court say: " The resolutions and deed of conveyance provided that in addition to the consideration of one dollar to be paid by the Santa Fe Company and the assumption and payment of the bonded indebtedness of the St. Louis Company, the Santa Fe Company should issue its stock to the stockholders of the St. Louis Company, dollar for dollar, in exchange for their stock in the latter company. The effect of this part of the transaction was to incorporate ·in the Santa Fe Company the stockholders of the St. Louis Company, combining all the stockholders of each company in one. This was an act of consolidation, and not by any means necessary to a mere purchase and sale. If

the transaction could be distinguished from a consolidation as a mere purchase and sale, to be regarded as a fair one (and it should be so regarded for the purpose of this argument), the St. Louis Company itself, and not its individual stockholders, should have received all the consideration for the property conveyed, so that it would have the equivalent of the property sold with which to meet the obligations and liabilities which it had created or incurred. * * * By the transaction the St. Louis Company was left without property, corporate rights or franchises of any kind, and without stockholders. All of these were transferred bodily to the Santa Fe Company, and became united, respectively, with the property rights, franchises and stockholders of the latter company. Why was this not a consolidation of the St. Louis Company with the Santa Fe Company? There is no magic in words. Merely calling the transaction a purchase and sale would not prevent it from being a consolidation. It cannot be supposed, from the nature of this transaction, that it was expected that the St. Louis Company should continue its active corporate existence after divesting itself of all its property, corporate rights and franchises and stockholders."

In the case at bar the sale was of the tangible assets, notes and accounts receivable, and the good-will of the American Saw & Knife Works. After this contract was executed there remained with and in the latter company its franchise, its stockholders and assets to the par value of $10,000 of the stock of the purchasing company. It continued to exist as a corporation, and could not be dissolved, had its stockholders so desired, until such assets had been legally distributed. Gulf, C. & St. F. Ry. Co. v. Newell, 73 Tex. 334. Further, the consolidation for the purchase, as in the bill alleged, went to the selling company, and not to its stockholders. Tested by the rule indicated in the Ashling case, *supra*, this transaction was a sale and not a consolidation.

If it was a purchase, and made in good faith, it must stand. Looking at the offer as made and accepted, it ap-

pears that no price was fixed.    The value of the tangible property was to be ascertained by an appraisement, which was to be made by the buyer and seller, with a proviso that if they could not agree they might call in a third person, whose decision in that regard should be final.    In this appraisement there was nothing to be allowed for intangible property.    That appraisement price could be paid either in cash or in the stock of the Hiles Company at its par value.    And it was further agreed that the bills and accounts payable of the selling company should not exceed its guaranteed bills and accounts receivable by more than $1,500.    We find nothing in this offer nor in its acceptance by the Hiles Company, which is unfair to that company, or by which appellant was legally damaged.

Nor is it controlling that the purchase as made embraced the entire assets of the selling company.    The statute (R. S. Hurd, 1903, sec. 5, ch. 32, p. 472) contains no prohibition forbidding a corporation from purchasing goods in the line of its business, either at wholesale or at retail. In the absence of such limitation the Hiles Company had the right to enter into this contract.    Treadwell v. Salisbury Mfg. Co., 7 Gray, 404.

The fact that the consideration price of this contract was paid in the stock of the Hiles Company is immaterial.    A corporation may receive any property it may lawfully purchase in exchange for its stock.    1 Cook on Corpn's., secs. 18 and 22; 26 Am. & Eng. Ency., 840, 2nd ed.

Appellant contends that this contract is illegal and void, because at the time it was entered into, the two corporations had a director in common.    We do not so understand the law.    Where, as we have found in this case, the contract was a fair one, the court will sustain it, even though one of the directors was common to both corporations.    2 Cook on Corporations, secs. 658, 662.    But if this were not the law, the bill does not allege that the directors of the Hiles Company passed upon the acceptance of this contract.    In the absence of such an allegation the question here attempted to be raised is not before us.

The fact, as the bill alleges, that this purchase turned out to be a losing one for the Hiles Company, and caused a loss to appellant and to the other stockholders of that corporation, is immaterial in this controversy. While it may impeach the wisdom of the purchase, it does not touch the power to enter into it.

Believing that the bill of complaint sets up no equitable ground for relief, we affirm the decree of the Circuit Court.

*Affirmed.*