[No. 7047. Decided January 6, 1908.]

H. LANGE, *Appellant*, v. THE RESERVATION MINING & SMELTING COMPANY et al., *Respondents.*[1]

CORPORATIONS—CONTRACTS—POWERS OF TRUSTEES—SALE OF PROPERTY. Where a mining corporation was formed to "buy, sell . . . and deal in mines," the trustees have power, against the objection of minority stockholders, to sell all its property, consisting of mines upon which had been expended over $56,000, for the sum of $50,000, since the sale does not disrupt the corporation and is not contrary to its purposes, which may be proceeded with as well after as before the sale.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered September 18, 1907, after a trial on the merits before the court without a jury, dismissing an action brought by a stockholder to enjoin the sale of the entire property of a corporation. Affirmed.

*Wakefield & Witherspoon,* for appellant.

*A. D. McLaren,* for respondents.

FULLERTON, J.—The respondent The Reservation Mining & Smelting Company is a corporation, and the other respondents are the trustees thereof. The respondent corporation was incorporated September 1, 1898, one of the objects for which it was formed being to "buy, sell, . . . and deal in mines." Shortly after its organization, the corporation purchased a group of claims, known as the Lone Star & Washington Consolidated Lode Mining Claims, situated on what was then the Colville Indian Reservation, entered into possession of the same, and between that time and March 10, 1902, expended thereon some $56,481.53 in development work, in an effort to make the mine a paying investment; the result being that there was extracted from the mines ore of the

[1]Reported in 93 Pac. 208.

value of $1,090.46. After March 10, 1902, no further effort was made to operate the mines.

On June 1, 1906, the board of trustees entered into a contract for the sale of the mines together with the machinery and tools used in operating the same, being all of the property owned by the corporation, for the sum of $50,000. On July 30, 1907, at a special meeting of the stockholders, called for that purpose, the matter of the sale was submitted to such stockholders for ratification or rejection. At such meeting, stockholders representing more than two-thirds of the outstanding stock voted to ratify the sale, while stockholders representing 6,500 shares, among whom was the appellant, voted against ratification. Immediately after the adjournment of the meeting, this action was brought to restrain the corporation and the trustees thereof from carrying into effect the contract of sale. The trial judge, at the hearing of the case, ruled that the trustees, with the approval of stockholders owning more than two-thirds of the stock of the corporation, could make the sale, even against the dissent of minority stockholders, and dismissed the appellant's action. This appeal was taken therefrom.

It is the contention of the appellant that neither the trustees, nor a majority of the stockholders of a corporation, have power, against the objection of minority stockholders, to sell or otherwise dispose of the entire property of the corporation, where no necessity exists for such action, such as the payment of legitimate debts, the prevention of further losses from a losing business, or such like causes. Unquestionably this was the rule of the common law as applied to a corporation organized to carry on a particular business, when such sale would have the effect of thwarting the purposes for which it was organized, and destroying the corporation itself; and especially was it true where the purposes of the sale was to "freeze out," or otherwise deprive the minority stockholders from further participation in the profits of the business con-

ducted by the corporation. *Theis v. Spokane Falls Gas Light Co.*, 34 Wash. 23, 74 Pac. 1004; *Parsons v. Tacoma Smelting & Refining Co.*, 25 Wash. 492, 65 Pac. 765.

But in the case before us the sale does not disrupt the corporation, nor is it contrary to the purposes for which the corporation was formed. On the contrary, the corporation will be in as good a condition to proceed with the objects it was formed to promote, after this sale, as it was before, and the sale will be but fulfilling one of its objects and purposes. Whether the sale is wise or not from a business point of view is not the question. It is a question of power in the board of trustees. And this power exists, we think, both by virtue of the articles of incorporation, and the general law conferring the management and control of the corporate business on the board of trustees. *Pitcher v. Lone Pine-Surprise Consol. Min. Co.*, 39 Wash. 608, 81 Pac. 1047.

The judgment appealed from is affirmed.

HADLEY, C. J., MOUNT, and ROOT, JJ., concur.

CROW, J., took no part.