[No. 9568. Department One. December 30, 1911.]

J. H. SMITH et al., Appellants, v. FLATHEAD RIVER COAL COMPANY et al., Respondents.[1]

CORPORATIONS—SALE OF PROPERTY—INADEQUATE PRICE—RIGHTS OF MINORITY STOCKHOLDERS—INJUNCTION. A prospecting and speculating mining company, organized for the purpose of buying, selling, and trading in real and personal property, will not be enjoined from making a sale of all its property (a lease of coal lands) at an alleged inadequate price, where there was no evidence of fraud, the officers exercised their best judgment, and the sale was ratified by a vote of a majority of the stockholders, and the value of the land was purely speculative; especially where the company was embarrassed financially and unable to prevent forfeiture of the land.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered November 26, 1910, dismissing, on the merits, an action for an injunction, after a trial before the court. Affirmed.

*John M. Gleeson* and *Joseph F. Morton*, for appellants.
*Skuse & Morrill*, for respondents.

DUNBAR, C. J.—This action was brought by the plaintiffs against the defendants, as trustees, for the purpose of obtaining a permanent injunction to prevent the defendants from disposing of all the company's property, consisting of a lease of 2,896 acres of coal land in British Columbia, at an alleged inadequate price. The defendant company is capitalized for $200,000, divided into shares of the par value of one dollar each. Appellants are the owners of 35,000 shares. The court granted judgments of dismissal in favor

[1]Reported in 119 Pac. 858.

of the defendants. From this judgment, this appeal is taken, and the granting of the judgment is the substantial error assigned.

From an examination of the testimony, we are of the opinion that the judgment of dismissal was justified. The appellants rely largely upon the case of *Theis v. Spokane Falls Gas Light Co.*, 34 Wash. 23, 74 Pac. 1004, but we think that the law announced in that case has no application to the case at bar. That was an application by a minority stockholder, to prevent the disincorporation of the company for the purpose of fraudulently forcing out of the corporation a minority stockholder who would not agree to the disincorporation, the ulterior purpose of which was the organization of another corporation to do the same business, with the petitioning stockholder eliminated; and we held that Bal. Code, § 4275, providing that any corporation may dissolve and disincorporate by application to the superior court upon a vote of two thirds of the stockholders, authorizes a disincorporation only upon a *bona fide* intent upon the part of the people interested to discontinue the business; and does not, as against the objection of a single stockholder, authorize the dissolution of a prosperous company for the purpose of enabling the majority stockholders to get control of the business by a sale of the property and the organization of the new corporation, with the same powers and to continue the same business. The whole record in that case showed a fraudulent intent to pervert the spirit of the law. But we are unable to gather any such intent on the part of the respondents from the testimony in this case.

First, it must be borne in mind that one of the objects of this corporation, as expressed, was to do just what it did do, viz., sell, or contract to sell, its property; for article 2 provides, among other things, as follows: "To buy, own, hold, deal in, mortgage or otherwise lien, and to lease, sell, exchange, transfer or, in any manner whatsoever, trade in or dispose of both real and personal property, and to de-

velop and improve the same." It will thus be seen that it was a speculating and prospecting corporation, and had a right to do what it was attempting to do, if it was not done fraudulently. It might not have exercised good judgment, but it had a right to exercise its best judgment through its trustees and a majority of its stockholders. The contract of sale made with one Davis was ratified at a meeting of the stockholders of the corporation, regularly held for that purpose, at which meeting 180,994 shares of the capital stock of the company were represented and voting, of which 126,663 shares voted for the ratification of the contract and 54,331 voted against it. Outside of a bare insinuation, there is nothing whatever tending to show an attempt to deceive or coerce any stockholder. It was simply a difference of opinion in regard to the value of the leasehold interest which was sold; and while there was some opinion testimony that the price for which the property was sold was entirely inadequate, it must be borne in mind that the land, which was principally valuable for its supposed coal deposits, had not reached the development stage, and that the value was purely speculative, the tract of land comprising 2,896 acres having been developed only to the extent of a tunnel 35 feet in depth with a cross-cut of twenty feet.

It also appeared that the plaintiffs had purchased shares of the capital stock at seven and a half and eight cents per share, which would be a little less than the amount realized on all the shares at the price obtained under the contract. It also appeared that the company was embarrassed financially and unable to meet the requirements of the Canadian government concerning this land, and that the deficit had to be advanced by the president of the corporation to prevent a forfeiture of its rights. There is no showing that the sale disrupts the corporation, or that the proceeds will not be invested in other enterprises consistent with the articles of incorporation. The case, we think, falls squarely

within the rule announced in *Lange v. Reservation Min. & Smelting Co.*, 48 Wash. 167, 93 Pac. 208.

The conclusion we have reached renders it unnecessary to discuss the third assignment of error, viz., that the court erred in not allowing plaintiffs to continue their case and make Thomas Davis a party.

The judgment is affirmed.

MOUNT, PARKER, FULLERTON, and GOSE, JJ., concur.