[No. 15209.    Department One.    March 28, 1919.]

JAMES LOGIE et al., *Plaintiffs*, v. THE MOTHER LODE COPPER MINES COMPANY OF ALASKA et al., *Defendants*.[1]

CORPORATIONS (172) — POWER TO SELL ALL CORPORATE ASSETS. Where the articles state the purposes of a mining corporation to be to purchase, acquire, sell and alienate property, it has the right to sell all of its property, notwithstanding the dissent of minority stockholders.

SAME (172)—CONSIDERATION FOR SALE—STOCK IN OTHER CORPORATION. Under Rem. Code, § 3684, authorizing corporations to purchase and hold stock in other corporations, the acceptance of stock in another corporation is a valid consideration for the sale of its assets.

SAME (172)—CONSIDERATION—PERFORMANCE OF CONDITIONS. Upon the sale of all its assets to another corporation in consideration of shares of stock in the vendee company, conditions of an executory contract to be performed by the vendee in the future are no less a consideration for a present transfer because they rest upon the faith that they will be performed, since the injured party has a remedy for failure of performance.

[1]Reported in 179 Pac. 835.

SAME (82)—MEMBERS AND STOCKHOLDERS—MEETINGS—NOTICE—STATING PURPOSE. A call for a stockholder's meeting to ratify a sale of assets is not invalidated because of illegally including as another subject-matter the distribution of the consideration to be received, where, at the meeting called, the stockholders did not make any distribution thereof, and expressly declared that it was not their purpose to do so.

SAME (132) — OFFICERS AND AGENTS — LAWFUL ACTS RATIFIED BY MAJORITY. The judgment of officers in selling all the assets of a corporation, ratified by 98 per cent of the stockholders, will not be reviewed by the courts in the absence of any proof that they were acting otherwise than in good faith, or obtaining any personal advantage, or of evidence of illegality or inadequacy of consideration.

Cross-appeals from a judgment of the superior court for King county, Frater, J., entered November 27, 1918, granting plaintiffs partial relief, in an action for an injunction, tried on the merits to the court. Affirmed on plaintiffs' appeal; reversed on defendants' appeal.

*Peters & Powell,* for plaintiffs.

*Scott Calhoun, J. W. Robinson,* and *Bogle, Merritt & Bogle,* for defendants.

MITCHELL, J.,—This action was brought by James Logie and David C. Isles, individually and as copartners trading as James Logie & Company, et al., as plaintiffs, to perpetually enjoin defendants, The Mother Lode Copper Mines Company of Alaska, a corporation of the state of Washington, et al., from consummating a proposed transfer and conveyance of substantially all of the property of the corporation. Jennie L. Miller intervened in the action, adopting all the allegations of the plaintiffs' complaint, and seeks the same relief. Answers containing certain denials and setting up an affirmative defense were interposed, to which affirmative defense appropriate replies were made. Upon trial, the court, by its judg-

ment, declined to perpetually enjoin the defendants, but did enjoin them from effecting the proposed transfer and conveyance unless and until they should thereafter be authorized to do so by the stockholders of the corporation at a meeting duly held for that purpose. Defendants have appealed because of the limited relief granted the plaintiffs and intervener; while the plaintiffs and the intervener have taken a cross-appeal because the court refused to grant permanent injunctive relief.

To avoid confusion, plaintiffs and intervener will be called plaintiffs and the other parties will be called defendants. The plaintiffs are stockholders of the defendant corporation. Defendants other than the corporation are trustees and officers of the corporation.

The transaction contemplated by defendants is not assailed on the ground of any bad faith or improper motives on the part of any of the stockholders, officers, or trustees of the corporation; nor is there any charge of discrimination or intended disfavor among or toward any of the stockholders; nor is there any allegation that any one or more of the officers or trustees or stockholders are to receive any benefits not shared by all stockholders alike. It is contended by plaintiffs that the proposed agreement is *ultra vires* of the corporation, and not tolerable in the law, over the objections of a minority of the stockholders, even though a majority of the stockholders favor the transaction. On the contrary, defendants insist the plan proposed is *intra vires,* nothing more nor less than a business matter, and that the question of the wisdom or advisability of the transaction is for the decision of the corporation and not for the courts.

The facts of the case are substantially as follows: The Mother Lode Copper Mines Company of Alaska

is a Washington corporation, organized in 1907, with capital stock of $5,000,000 par value, later increased to $7,500,000 par value. Among the objects and purposes of the corporation, as expressed in its articles of incorporation, are included the acquisition of mining and other real and personal property. Its articles authorize it to acquire, hold, use, equip, better, improve, encumber or alienate its properties in whole or in part in the same manner and to the same extent as any actual or artificial person having similar dominion over property and property rights; and by section 14, article 2, of its articles, the corporation has power to subscribe to and own stock in other corporations, and to do such other acts pertaining to its business and property "as in the judgment of the trustees shall be necessary or beneficial to the stockholders of the corporation."

The corporation has acquired, and for many years has been engaged in developing and operating, a number of copper mining claims in Alaska; and it has no other property except a relatively small amount of personal property owned and used in connection with its mining operations. Its mining properties are situated about fourteen miles from the Copper River and Northwestern Railway, the only line of transportation from the coast, about two hundred miles distant, into the district, the terminus of which railway is the Kennecott Mines, owned and operated by the Kennecott Copper Corporation. The Kennecott Mines are in active operation on a large scale, having direct means of transportation as stated, and it has a large, well-equipped concentration plant. Its mining claims adjoin those of defendant corporation, but topographically they are separated by a high mountain range. As they are worked at the present time, the mines of defendant corporation and of the Kennecott

Copper Company are only about 1,400 feet apart under the mountain separating the mines, and it is the plan of the parties to the contract involved to connect the mines by a tunnel through which, .by means of a tramway, ore from defendant's mines will be taken to the concentrator and shipping grounds of the Kennecott Mines. Defendant's only present means of transportation is by truck over a rough wagon road fourteen miles to the railway, and it has no concentration plant.

Development work and engineers' estimates fix, with reasonable certainty, vast quantities of copper ore in defendant's mines, the grade of which, however, is such that its value for commercial purposes must be stimulated by the advantages of concentration and cheaper transportation. It appears from the surveys and estimates that an independent railroad to connect with the Copper River and Northwestern Railway would cost approximately $600,000, and a concentration plant would cost nearly a million dollars. The defendants are without sufficient means to meet such expenditures.

About the date of the proposed contract involved herein, the liquid assets of the corporation consisted of $16,460 worth of material and supplies, $6,040 in cash, and $198,532 of bills receivable; and it owed, in addition to its bonded indebtedness of $500,000, accounts payable $94,520, and accrued wages of $12,317. In such circumstances, the officers of the corporation deemed it to be unwise, within good business judgment, if not impossible, to raise funds required for the necessary improvements, investment and relief, other than by the present proposed plan, expressed by a written contract, approved by the trustees of the corporation, between the corporation and one Stephen

Birch who is president of the Kennecott Copper Corporation. By the terms of the contract, stated to be subject to ratification by the stockholders of the defendant corporation, defendant corporation sells all its mining claims, properties, equipment and improvements located at Kennecott, Alaska, on the following terms:

(1) A new corporation to be organized in Delaware under the name of "Mother Lode Coalition Mines Company," with 2,500,000 shares of stock having no par value;

(2) Defendant corporation is to convey to the new company its Alaska property mentioned, subject to the existing bonded indebtedness of $500,000, in consideration of the issue by the new company of all its capital stock; 1,225,000 shares to be issued and delivered to defendant corporation and 1,275,000 shares to Birch or his nominees. Contemporaneously with the delivery of deeds of conveyance, Birch is to furnish, or cause to be furnished, the new company: First, $550,000 to redeem the outstanding bonds and interest of defendant corporation; second, all money necessary to pay the expenses of organizing the new company, including Federal taxes on the issuance of its stock and on the conveyances from the defendant corporation to the new company; third, such further sums, not exceeding one million dollars, in the judgment of Birch, as may be necessary for sufficient working capital, all such advances to be secured by bonds, mortgages or other obligations, as agreed upon, of the new company, and which are to be repaid before any dividends are paid; fourth, the new company to have the benefit of the same smelting, refining, freight and selling charges as the Kennecott Copper Corporation; fifth, the books of the new company to be kept

open to inspection by an appointee of the defendant corporation; sixth, the new company to have seven directors, Birch to nominate four and the defendant corporation three, who shall organize by electing James J. Godfrey and Clarence L. Warner, now president and secretary, respectively, of defendant corporation, president and secretary, respectively, of the new company; seventh, the new company to reimburse defendant corporation for all moneys spent on its properties from May 1, 1918, to date of deeds of conveyance, not exceeding $15,000 per month.

The contract was approved by the board of trustees of the defendant corporation on May 10, ·1918, at which time a meeting of the stockholders to consider the proposition (setting it out in the minutes of the meeting of the board of trustees) was called for July 1, 1918, at 2 o'clock, p. m., to be held at the office of the defendant corporation in Seattle, Washington. Accordingly, on May 29, 1918, written notice was given of a special stockholders' meeting of the corporation to be held at the office of the corporation, at 1317 Alaska Building, Seattle, on July 1, 1918, at 2 o'clock, p. m., to consider and act on the proposed contract. The notice set out in a concise manner the substance of the proposed contract, and stated that the full agreement in writing would be submitted at the meeting. The notice further advised that, if the proposition was approved, proper resolutions would be passed to enable the officers to carry out and effectuate the agreement; and for the transaction of other proper business. Accompanying the notice to the stockholders, was a letter by Mr. Godfrey, president of the corporation, addressed to the stockholders, in which he stated in substance—in fact, practically repeated—the terms of the proposed contract, but added

one thing (considerably dwelt upon by plaintiffs) viz:
In speaking of the shares of stock of the new corpora-
tion to be formed, consisting of one million, two hun-
dred twenty-five thousand (1,225,000) which were to
be issued and delivered to defendant company, he
said: *"which will then distribute the same among
its stockholders in proportion to their respective in-
terests."*

The stockholders met at the time and place ap-
pointed and adjourned, from time to time, until July
22, 1918, on which date there was stock of the defend-
ant corporation represented at the meeting, either in
person or by proxy, in excess of six million dollars
of the capital stock. At the meeting on July 22, 1918,
the stockholders duly considered the matter at hand,
having the contract before them already signed by the
parties and ratified by the board of trustees of de-
fendant corporation, and passed resolutions approv-
ing the proposed sale and transfer; but no resolution
was passed or action taken to authorize any distribu-
tion by the corporation among its stockholders of
shares to be received from the new company. The
resolution authorizing the sale and transfer was sup-
ported by the vote of $5,949,678 and opposed by the
vote of $137,700 of the capital stock, plaintiffs being
among those who voted in the negative.

The meeting, after appointing an auditing commit-
tee, was still further adjourned until July 29th, to
allow an examination of, and report on, the affairs of
the corporation. In the meantime, between July 22d
and July 29th, this action was commenced, and, among
other things, the complaint alleged that it was the
intention of defendant corporation to distribute
among its stockholders the shares of stock which were
to be issued by the new company (Mother Lode Coali-

tion Mines Company) for the sale and conveyance of defendant's properties.

The stockholders, upon reconvening on July 29th, having in mind the complaint already served, passed a supplementary resolution declaring it was not, at the time of passing the resolution on July 22d, approving and authorizing the sale, nor was it at the present time the purpose or intent of the stockholders to make any such distribution. This last resolution appears to have been unnecessary except to possibly allay the fears of plaintiffs, for action looking to such distribution of shares was not within the call or notice to the stockholders, nor embraced within the resolutions theretofore adopted on July 22d approving the proposed sale and transfer.

Under the power granted by Rem. Code, § 3683, especially subdivisions 3 and 7 thereof, a corporation, whose objects and purposes are declared by its articles of incorporation to be, among other things, to purchase and acquire real and personal property and sell and alienate the same, in whole or in part, freely and to the same extent as any person, actual or artificial, having similar dominion over property may lawfully do, obviously has the power to lawfully dispose of substantially all, or in fact all, of its property. That is one of its objects. The power to sell all or part of its property is coextensive with the power to acquire by purchase or otherwise. This court has repeatedly held that, where the right and purpose to sell is among the objects expressed by its articles, a corporation may sell—that is, has the power to sell—all of its property, notwithstanding the dissent of minority stockholders. In the case of *Lange v. Reservation Mining & Smelting Co.*, 48 Wash. 167, 93 Pac. 208, it was said:

"It is the contention of the appellant that neither the trustees, nor a majority of the stockholders of a corporation, have power, against the objection of minority stockholders, to sell or otherwise dispose of the entire property of the corporation, where no necessity exists for such action, such as the payment of legitimate debts, the prevention of further losses from a losing business, or such like causes. Unquestionably this was the rule of the common law as applied to a corporation organized to carry on a particular business, when such sale would have the effect of thwarting the purposes for which it was organized, and destroying the corporation itself; and especially was it true where the purposes of the sale was to 'freeze out,' or otherwise deprive the minority stockholders from further participation in the profits of the business conducted by the corporation. *Theis v. Spokane Falls Gas Light Co.*, 34 Wash. 23, 74 Pac. 1004; *Parsons v. Tacoma Smelting & Refining Co.*, 25 Wash. 492, 65 Pac. 765.

"But in the case before us the sale does not disrupt the corporation, nor is it contrary to the purposes for which the corporation was formed. On the contrary, the corporation will be in as good a condition to proceed with the objects it was formed to promote, after this sale, as it was before, and the sale will be but fulfilling one of its objects and purposes. Whether the sale is wise or not from a business point of view is not the question. It is a question of power in the board of trustees. And this power exists, we think, both by virtue of the articles of incorporation, and the general law conferring the management and control of the corporate business on the board of trustees. *Pitcher v. Lone Pine-Surprise Consol. Min. Co.*, 39 Wash. 608, 81 Pac. 1047."

See, also, *Smith v. Flathead River Coal Co.*, 66 Wash. 408, 119 Pac. 858; and Rem. Code, § 3686. In the *Lange, Pitcher* and *Smith* cases, *supra*, it is true the sale involved in each case was ratified by the stockholders. So, in the present case, the sale has been

ratified by a stockholders' vote of about 98 per cent, against about 2 per cent, of the total outstanding stock.

There is no valid legal objection to the consideration paid for the property, in the form of stock in the new company. There may be some opinion apparently opposed to this view in other states not having statutes similar to ours. Rem. Code, § 3684, empowers and authorizes a corporation

"To  . . .  acquire by purchase or otherwise and to own, hold, sell, assign and transfer shares of the capital stock of any other corporation  . . .  ;"

and we have already seen that the articles of the defendant corporation authorized it to acquire and hold stock in another corporation. In such circumstances, the right to accept stock in payment for property finds ample support in the authorities. *Butler v. New Keystone Copper Co.*, 10 Del. Ch. 371, 93 Atl. 380, 45 L. R. A. (N. S.) 477; *Traer v. Lucas Prospecting Co.*, 124 Iowa 107, 99 N. W. 290; *Metcalf v. American School Furniture Co.*, 122 Fed. 115; *Hiles v. Hiles & Co.*, 120 Ill. App. 617.

In the *Butler* case, *supra*, the court said:

"The new Keystone Copper Company had power to sell substantially all its property, and also to purchase shares of stock of another company, and it follows that it had the power to exchange its property for stock. I am clear that the transaction of exchanging the mine for shares of the other company did not constitute either a consolidation or merger of the two corporations, either in fact or in law."

And in the *Traer* case, *supra*, the court said:

"The Lucas Company having the power to sell and transfer all of its property, and the power to purchase the stock of another corporation, it follows that it had the power to so invest all of its property. .

*Franklin Co. v. Lewister Savings Bank,* 68 Me. 43, 28 Am. Rep. 9; *Treadwell et al. v. Salesbury Mfg. Co. et al.,* 7 Gray, 393, 66 Am. Dec. 490; *Booth v. Robinson,* 55 Md. 419."

It is contended by plaintiffs that the transaction here amounts to but a gift to Mr. Birch of 51 per cent of the property of defendant corporation. But we think it does not. We have already noticed the obligations of the purchaser to pay off all the present indebtedness of the defendant corporation, although he is still to be secured, with preference, by mortgage or otherwise, upon the property transferred; he agrees further to pay all expenses and Federal taxes in organizing the new company and transferring the property of defendant corporation, and to advance sufficient money to further develop the mines and construct a tunnel and tramway to the Kennecott Mines, thus reaching transportation facilities and facilities for concentrating and refining the ore. Within this contention of plaintiffs, it is further argued that it does not yet appear there is any binding agreement with the Kennecott Copper Corporation for concentration, refining and shipping privileges. With reference to these things and the furnishing of additional capital, it is obvious they are all business matters to be looked after by the officers of the corporation, for the corporation, as an individual takes care of his own individual interests. Those conditions of an executory contract which are to be performed in the future are no less a consideration for a present transfer of property because they rest in part upon the faith that they will be kept and performed by the promisor. Should there be substantial failure of such consideration by arbitrariness on the part of the promisor with reference to performance, or otherwise, the injured party is not without a remedy; and it is

to be observed the plan proposed in this case, and to be followed, holds out mutual encouragement to the vendor and purchaser—their interests are alike in kind.

It is further contended by plaintiffs that the stockholders' meeting was improperly called and held because, accompanying the notice of the meeting, there was a letter from the president  stating the stock to be issued by the new company would be distributed to the stockholders of defendant corporation. Assume, for the moment, and for argument's sake only, that the letter was a part of the call; then it follows that the stockholders' meeting was called for two purposes: First, to consider the ratification of the contract with Birch, which contract had nothing to do with the distribution of the stock of the new company among the stockholders of the defendant corporation; and second, such distribution of such stock. Clearly, then, if at the meeting the stockholders not only did not decide to distribute such stock among the stockholders of defendant corporation, but, on the contrary, expressly declared it was not their purpose to do so, the fact that this subject-matter was mentioned in the call would in no sense affect the result or validity of the action taken upon the other matter properly within the call, nor afford any cause for complaint at the hands of stockholders actually present and voting unsuccessfully in relation to that other matter. It would be a case of action taken more limited than the purposes of the call, and omitting that one purpose which it is claimed the corporation could not by such means accomplish. The purpose of the statement in the notice is to advise stockholders of the business to be brought before them, and manifestly one who attends cannot complain if the action taken is within the

power of the corporation and the stockholders' meeting and related to a subject-matter stated in the call. *Handley v. Stutz*, 139 U. S. 417; *Nickum v. Burckhardt*, 30 Ore. 464, 47 Pac. 788, 48 Pac. 474, 60 Am. St. 822.

We reach the conclusion that the sale and transfer are not beyond the powers of the corporation, and that it has full authority in disposing of its property to take in exchange therefor the stock of another corporation.

There being an absence of any allegation, claim, or proof that the officers of defendant corporation were acting otherwise than in good faith, and no charge or claim that the officers were attempting to obtain any personal advantage peculiar to themselves, nor evidence of illegality or inadequacy of consideration for the sale, it results that the judgment of the officers of the corporation, ratified by about ninety-eight per cent of its stockholders, as to the wisdom of the exchange, will not be reviewed.

The cross-appeal of the plaintiffs is not well taken.

The judgment granting qualified injunctive relief against defendants is reversed, and the cause remanded with direction to the lower court to dismiss the action.

CHADWICK, C. J., MAIN, MACKINTOSH, and TOLMAN, JJ., concur.