**SUTHERLAND et al. v. GARBUTT et al.**

No. 10078.

Circuit Court of Appeals, Ninth Circuit.

Nov. 25, 1942.

As Amended Nov. 30, 1942.

W. H. Abel, of Montesano, Wash., O. C. Moore, of Spokane, Wash., and Frederick D. Anderson, of Los Angeles, Cal., for appellants.

David E. Hinckle, of Los Angeles, Cal., for appellees Garbutt et al.

Richard G. Adams, of Los Angeles, Cal., for appellee Chandis Securities Co.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a decision of the district court, sitting without a jury, refusing to set aside certain transactions whereby Mutual Gold Corporation, a corporation organized under the laws of Washington, hereinafter called Mutual Gold, sold in exchange for stock in another corporation substantially all its property consisting of a contract for the purchase of certain mining claims located in California, owned by Alice Clark Ryan and Chandis Securities Company, a corporation, hereinafter called Owners.

The court held that the sale was not ultra vires of the powers of the corporation under the laws of Washington, and that claimed fraud and oppression in the sale transaction was not proved.

Mutual Gold had exhausted its resources by expenditures of over $150,000 in the development of the mining claims. It had a considerable indebtedness and $10,000 was shortly to become due to the Owners on the purchase contract, and appellee Garbutt as agent of the Owners was pressing Mutual Gold for its payment. Upon its non-payment Mutual Gold would lose its contract and its entire investment and be without resources to pay its creditors. Appellee Garbutt desiring to obtain an interest in the mining properties, and while so pressing Mutual Gold, made it a series of propositions for such acquisition.

The proposition finally accepted was that the contract, which Mutual Gold was about to lose, would be transferred to Garbutt who would cause a new corporation to be formed, to which he would then transfer the contract. Mutual Gold was to receive as its consideration 4,999 of a total of 10,000 shares of the capital stock of the new company, while Garbutt was to receive 5,001 shares.

Garbutt agreed to advance to Mutual Gold $10,000 to keep alive the purchase contract and to advance further sums at his option for the development of the property. These further advances, if made, were to be returned out of the profits or funds available from the operation or sale of the property and not otherwise. If Garbutt concluded not to proceed with the venture all his stock was to be transferred to Mutual Gold. By a subsequent agreement half the net proceeds of production from the property were to be paid to Mutual Gold to discharge its outstanding indebtedness, including the $10,000 owed Garbutt, after the repayment of the advances and a provision for working capital. That is to say, half of the net proceeds were to be paid over as a debt owed, and not as a dividend. Over a majority of the shareholders consented to this transaction.

The purchase contract was transferred to Garbutt pursuant to the agreement, and Garbutt in turn transferred it to the Log Cabin Corporation which he had caused to be formed. Garbutt advanced the agreed $10,000 to Mutual Gold which was paid by it to Log Cabin for the issue to it of 4999 shares of Log Cabin's stock. The $10,000 was used to pay the installment due the Owners. 5,001 shares were issued to Garbutt who placed them in escrow to be delivered to Mutual Gold if he elected to terminate his agreement to carry forward the enterprise.

Garbutt did not terminate his agreement but pursued a vigorous management further developing the mining properties, and advanced upwards of $127,000 for machinery. None of this has been repaid and he has received nothing by way of interest or for his managerial services to the Log Cabin Corporation. As a result of the improved condition through Garbutt's management the project showed signs of profit, though none had been earned, and the appellants, minority stockholders, brought

this suit to have the properties restored to Mutual Gold.

Pursuant to an amendment of the Washington corporate law made after Mutual Gold was incorporated there was a stockholders meeting at which more than two-thirds of the outstanding shares authorized the directors to make such disposition of all the corporate property. Appellants claim that the notice for this meeting was insufficient. We do not agree. The notice contained a proposal which was voted for at the meeting by 1,984,609 of the 2,633,830 shares outstanding. The proposal so adopted read: "Resolved, that the Board of Directors of this corporation be and they are hereby authorized, empowered and directed to sell, lease, deal with, operate, exchange or otherwise dispose of, to any person, persons or corporation desiring to purchase, lease, deal with, exchange, operate same, any part of or all of the assets of this corporation, at such time or times, for such price and such terms and conditions, for cash or otherwise, including the exchanging for shares in another corporation, domestic or foreign, as they in their absolute discretion deem expedient, advisable or desirable, and to perform any other acts in this connection, which in their judgment they may deem necessary or advisable." The directors ratified the agreement made by its officers with Garbutt and at a shareholders annual meeting it was ratified by more than a majority of the outstanding shares.

Appellants claim that it is not sufficient that two-thirds of the stockholders so authorize the exchange because at the time the corporation issued its shares the Washington law required the consent of all the shareholders and that this created a contract with each shareholder which could not be impaired by corporate action under subsequent Washington law. We do not agree that such was the law of Washington when the shares were issued; hence, it is un-

necessary to consider the constitutional question raised by appellants.

Mutual Gold's articles of incorporation provide for just such an exchange by the board of directors.[1] The Supreme Court of Washington upheld a similar transaction by corporate directors acting under such articles without a full shareholders consent in Logie v. Mother Lode Copper Mines, 106 Wash. 208, 179 P. 835, and in Lange v. Reservation Mining & Smelting Co., 48 Wash. 167, 93 P. 208.

These cases were not overruled by Moore v. Los Lugos Gold Mines, 172 Wash. 570, 21 P.2d 253, as claimed by appellants. In the latter case the entire property was transferred without any consideration whatsoever to the transferor corporation. The shares of that corporation were non assessable and the new corporation gave in exchange for the property an issue of its assessable shares to the shareholders of the old corporation, thereby leaving the transferor corporation an empty shell, with its shareholders holding an assessable stock investment in the same mining venture in which they had bought non assessable shares. No provision of the old company's articles of incorporation warranted a transfer without any consideration. The Washington Court held that it was a reorganization of the old company without compliance with the Washington corporate reorganization law.

Appellants claim that Garbutt's pressure as agent of the Owners in asserting their right to declare a forfeiture of the purchase contract constitutes coercion warranting avoidance of the transfer of the contract to Garbutt. We do not agree. Garbutt as agent did no more than his principals were entitled to do. The lower court could properly infer that he dealt at arms length with Mutual Gold. The Owners no doubt preferred the Log Cabin Corporation, managed by a man of Garbutt's energy and backed by his finan-

---

[1] "Article LI.

"The objects and purposes for which this corporation is organized are as follows:

\*  \*  \*  \*  \*  \*  \*

"(b) To acquire by purchase or exchange, or in any other manner, in the United States or in Foreign Countries, mining claims, grounds or lodes, mining and mineral rights, concessions or grants, or any interest therein, and to sell, ex-

change, lease or in any other manner to dispose of the whole or any part thereof or any interest therein when desirable.

\*  \*  \*  \*  \*  \*  \*

"(f) To acquire, own, hold, buy, sell and in every other manner deal in the shares of stock or other corporations, and to exchange shares of its own capital stock for any of the things, rights or properties which it might otherwise lawfully acquire and hold as enumerated in this article."

cial resources, to Mutual Gold with its resources exhausted and unable to pay its debts, and about to default to the Owners in its next installment of the purchase contract.

Nor can we say that there was error in the finding of the district court that the consideration received by Mutual Gold was adequate. The advance of $10,000 and the acquisition of shares of stock in a going concern so well financed, and managed by a vigorous co-stockholder having a half interest in the profits—an interest likely to cause him to advance more money—seems on its face a substantial betterment to the stockholders of Mutual Gold over their prior precarious interest in the expiring venture.

In the process of the transfer of the properties a majority of the directorships of the new corporation, Log Cabin, were filled by directors of Mutual Gold and appellants claim there must be inferred some violation of trust in the final ratification of the transaction by both corporations. We agree that the evidence warrants the district court's finding that there was no violation of the duties of the Mutual Gold directors in exchanging the mining agreement for the Log Cabin stock, nor any fraud, duress, or coercion on the part of Mr. Garbutt.

The judgment is affirmed.