[No. 33037.   Department Two.   May 5, 1955.]

AMIEL VAN BUREN et al., *Respondents*, v. HIGHWAY RANCH, INC., *et al.*, *Appellants*.[1]

*Ogden & Ogden* and *Hamblen, Gilbert & Brooke,* for appellants.

*Keith, Winston & Repsold* and *Gose & Williams,* for respondents.

[1]Reported in 283 P. (2d) 132.

HAMLEY, C. J.—The sole business of Highway Ranch, Inc., since its incorporation in 1930, has been the leasing of its one substantial asset, a 2294-acre wheat farm in Franklin county, Washington. From 1930 to 1953, the corporation leased this farm to Amiel Van Buren, who owns one third of the corporate stock. In 1953, the corporation, under the control of Robert D. McCornack, who holds voting rights in the remaining two thirds of the corporate stock, declined to renew Van Buren's lease. Instead, it leased the farm to John McCornack, the son of Robert D. McCornack.

Van Buren, dissenting from such corporate action, brought this proceeding to force the corporation to purchase his corporate shares. Van Buren's wife was joined as a party plaintiff. The corporation, two corporate officers, and a bank, which is the trustee of certain corporate shares, were named defendants.

The action was brought pursuant to RCW 23.36.140 [cf. Rem. Rev. Stat. (Sup.), § 3803-36], RCW 23.16.140, and RCW 23.16.160 [cf. Rem. Supp. 1949, § 3803-41]. RCW 23.36.140 provides that, subject to certain conditions, a corporation may, through action of its shareholders, make a voluntary sale, lease, or exchange of all of its assets. RCW 23.16.140 provides, among other things, that, if a corporation has authorized the lease of all of its assets in accordance with the provisions of RCW 23.36.140, a shareholder who did not vote in favor of such corporate action and who, within a specified time, filed with the corporation his written objection thereto, demanding payment for his shares, shall be paid the value of such shares.

RCW 23.16.160 provides that, if within a specified time the corporation and the dissenting stockholder cannot agree upon the value of such shares, either may institute a proceeding in the superior court to obtain a determination of the value of the shares and a transfer of such shares to the corporation, upon the payment of such value.

Defendants resisted the action on various grounds. After a nonjury trial, an order was entered, reciting that plaintiffs had complied with the applicable statutes and were entitled

to the valuation of and payment for their corporate shares. The order further provides for the appointment of an appraiser, and specifies his duties and the procedures to be followed. Defendants appeal.

Appellants advance five reasons why the order should be reversed. One of these is that the lease in question was an act of the corporation, performed in the ordinary course of its business, and, therefore, it was not the kind of transaction contemplated by the statutes referred to above.

Prior to the enactment of RCW 23.36.140 as a part of the uniform business corporation act (Laws of 1933, chapter 185, p. 770), it was the law that, in the absence of a charter provision, neither the officers nor the majority of the stockholders of a corporation had the power to dispose of its entire assets against the dissent of a single stockholder, if (1) the corporation was a prosperous, going concern, able to achieve the objectives of its creation; and (2) the transaction would have the effect of thwarting the purposes for which it was organized. *Theis v. Spokane Falls Gas Light Co.,* 34 Wash. 23, 74 Pac. 1004; *Lange v. Reservation Mining & Smelting Co.,* 48 Wash. 167, 93 Pac. 208.

Thus, under the law as it existed prior to the enactment of RCW 23.36.140, a minority of stockholders could not prevent the disposition of all corporate assets, if such would be but fulfilling one of the objects and purposes of the corporation. *Lange v. Reservation Mining & Smelting Co., supra; Smith v. Flathead River .Coal Co.,* 66 Wash. 408, 119 Pac. 858; *Logie v. Mother Lode Copper Mines Co.,* 106 Wash. 208, 179 Pac. 835.

Certain evils arose from the application of the general principle of the common law requiring unanimous stockholder consent for the disposition of all the assets of a corporation. See *In re Timmis,* 200 N. Y. 177, 93 N. E. 522. To remedy these evils, most of the states have enacted legislation similar to RCW 23.36.140. 9 A. L. R. (2d) 1306, annotation; 9 U. L. A. (1951) 124; Ballantine, Corporations (Rev. ed. 1946) 668; 13 Fletcher, Cyc. Corporations (Perm. ed.) 113, § 5798. In enacting such statutes, however, it was

realized that it was necessary to afford some relief to dissenters. The result was that many states have enacted statutes similar to our RCW 23.16.140 *et seq.,* giving dissenters the right to receive cash for their stock and providing for an appraisal where no agreement as to value can be reached.

The two statutory provisions are interdependent in the sense that, before a minority stockholder is entitled to appraisal and payment for his shares under statutes similar to RCW 23.16.140, the disposition of corporate assets must be one which comes within the terms of the statutes similar to RCW 23.36.140. *Pollack v. Adwood Corp.,* 321 Mich. 93, 32 N. W. (2d) 62; *In re Timmis, supra.*

Some states have specific statutory provisions stating that, in the case of sales or leases of all or substantially all of the assets *made in the usual and regular course of business,* no consent or authorization of the shareholders shall be required. See, for example, Smith Hurd Ill. Ann. Stat. (1954) c. 32, §§ 157.71, 157.72; N. C. G. S. 55-26, subd. 9 and 11; S. C. Code (1952) § 12-631. Our statute contains no language similar to that shown in italics above.

■ The general rule appears to be, however, that, even in the absence of an express statutory exception, statutes of the kind here invoked are inapplicable where, in view of the purposes and objects of the corporation, a sale, lease, or exchange of all of its assets may be regarded as one in the normal and regular course of business. *Jeppi v. Brockman Holding Co.,* 34 Cal. (2d) 11, 206 P. (2d) 847, 9 A. L. R. (2d) 1297; *Thayer v. Valley Bank,* 35 Ariz. 238, 276 Pac. 526; *In re Miglietta,* 287 N. Y. 246, 39 N. E. (2d) 224; 9 A. L. R. (2d) 1306, 1309, *et seq.,* annotation.

Respondents do not argue that the general rule is otherwise. Nor do they deny that one of the purposes for which Highway Ranch, Inc., was formed, and the only purpose which it has pursued, is the lease of its one substantial asset, the Franklin county wheat farm. It is their contention, however, that the transaction here in question involved overreaching, unfairness, and breach of a fiduciary relationship

on the part of Robert D. McCornack, and that a transaction so tainted cannot be regarded as one made in the ordinary course of business. Respondents cite no authorities in support of this proposition.

A corporation normally deals with its stockholders in a fair and equitable manner. In this sense, it may be said that a transaction which evidences overreaching, unfairness, or breach of a fiduciary relationship is not made in the "normal and regular course of business."

■■ The question before us, however, is whether this transaction is to be regarded as one in the normal and regular course of business, within the meaning of the general rule excepting such transactions from the statutory procedures in question. In our opinion, the words "normal and regular course of business," as used in this rule, refer not to the equity or fairness of the particular transaction, but to whether it was of a class which, in the normal course of its business, the corporation is expressly authorized to consummate. Our view in this regard finds confirmation in the history of the rule, as outlined above. It is also supported by the cited decisions, all of which are concerned only with the relationship between the particular transaction and the general purposes and objects of the corporation.

Respondents argue that the statutory remedy here pursued is exclusive as to unfairness or breach of fiduciary duty short of fraud. *Matteson v. Ziebarth,* 40 Wn. (2d) 286, 242 P. (2d) 1025, is cited in support of this view. Hence, it is argued, if denied relief in this action, respondents are left without remedy.

In *Matteson,* it was held that, where the statutory remedy was available, if properly invoked, a minority stockholder could not obtain relief in equity on a claim based upon unfairness rather than fraud. In the instant case, the statutory remedy is not available, because the transaction in question was made in the normal and regular course of business. Hence, *Matteson* is not authority for the proposition that the statutes under consideration would prevent respondents from seeking relief in equity. Nothing said in this opinion

is intended to imply that respondents are, or are not, entitled to relief in equity.

The order is reversed.

MALLERY, HILL, WEAVER, and ROSELLINI, JJ., concur.