POLLACK *v.* ADWOOD CORPORATION.

1. CORPORATIONS—LEASE OF PRINCIPAL ASSET—BOARD OF DIRECTORS.
    In extending a lease to hotel property owned by defendant cor-
        poration, and which was its principal asset except for cash in
        the bank, the board of directors performed a proper and law-
        ful purpose for which the corporation was organized, especially
        where it is shown that leasing of the hotel had been one of
        the principal purposes of the corporation's existence from its
        beginning, such activity was indicated in its articles and had
        been a financially successful mode of operation (Act No. 327,
        § 44, Pub. Acts 1931).

2. SAME—LEASE OF PRINCIPAL ASSET—BOARD OF DIRECTORS—SHARE-
    HOLDERS.
        Matters involving the leasing of a hotel, the principal asset, ex-
        cept cash in bank, of corporation, and the terms and condi-
        tions of a lease are matters to be considered and acted upon by
        the board of directors in the ordinary discharge of its duties
        and not matters required to be submitted to the shareholders
        (Act No. 327, § 44, Pub. Acts 1931).

3. SAME—APPRAISAL OF STOCK—STATUTES.
        Dissenting stockholder seeking appraisal of his shares of stock
        and recovery of such value on sale of substantially all of cor-
        porate assets must show a full and complete compliance with
        terms of the statute to be entitled to such relief (Act No. 327,
        § 44, Pub. Acts 1931).

4. SAME—SHAREHOLDERS—RIGHT TO VALUE OF STOCK—LEASE OF
    PRINCIPAL ASSET.
        Where there was action taken at a directors' meeting, but not at
        a shareholders' meeting, of a corporation relative to extension
        of lease of hotel, its principal asset, and plaintiff shareholder
        was, therefore, unable to vote against such action, he was not
        entitled to have fair cash value of such stock as determined
        by appraisers as of day preceding the day of such action (Act
        No. 327, §§ 44, 57, Pub. Acts 1931).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4] 13 Am. Jur., Corporations, § 964.
[3] 13 Am. Jur., Corporations, § 1226.

Appeal from Wayne; Richter (Theodore J.), J. Submitted January 15, 1948. (Docket No. 47, Calendar No. 43,923.) Decided April 16, 1948. Rehearing denied June 29, 1948.

Petition by David Pollack against Adwood Corporation, a Michigan corporation, for appointment of appraisers under Act No. 327, § 44, Pub. Acts 1931. Judgment for plaintiff. Defendant appeals. Reversed.

*Benjamin Alpert* (*Harry S. Toy*, of counsel), for plaintiff.

*Lewis & Watkins*, for defendant.

REID, J. Plaintiff petitioned the circuit court in chancery, complaining of the action of the directors of defendant corporation extending a lease of a hotel said to be substantially the entire property of defendant corporation, without authorization by the shareholders of the corporation. Plaintiff petitioned for an order appointing appraisers to appraise the value of his stock in defendant corporation and for judgment against defendant corporation for the appraised value of his stock, under Act No. 327, § 44, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 10135-44 [Stat. Ann. § 21.44]). Defendant corporation (hereinafter referred to as defendant) answered the petition, setting forth new matter in its answer. Plaintiff replied to such answer. No testimony was taken. Certain exhibits were offered and received in evidence and parts of colloquies are set forth in the record. The lower court made an order determining that appraisers shall be appointed. Defendant appeals.

Defendant was organized June 7, 1941, under the provisions of Act No. 327, Pub. Acts 1931. Article 2 of its articles of incorporation reads in part as follows:

"The purpose or purposes of this corporation are as follows:

"(a) To acquire, own, use, improve, lease, operate, sell, mortgage, or otherwise dispose of the following described real estate, and personal property in the city of Detroit, county of Wayne and State of Michigan, to-wit:"

Thereupon follows a description of property known as Hotel Detroiter at the southeast corner of Woodward avenue and Adelaide street, together with furniture and equipment. Other purposes described in detail in the articles of incorporation are to borrow money for corporate purposes, to participate in any reorganization relating to the hotel, and also to promote the business or value of the property, et cetera.

Defendant claims the facts to be as follows:

Early in December, 1941, defendant acquired title in fee to the premises mentioned above, subject to certain liens, including a lease of said premises to Detroit Hotels, Inc., expiring October 31, 1943. Defendant mortgaged said premises for $200,000 and discharged all other liens except said lease. By action of its board of directors, on October 27, 1942, defendant entered into a written lease of said premises to Nathan Agree for a term of five years, commencing November 1, 1943. This action was reported to the shareholders at the annual meeting on April 27, 1943.

By action of its board of directors, on August 12, 1946, defendant entered into a written extension of said lease for a term of three years commencing

November 1, 1948. On said date, August 12, 1946, the mortgage of $200,000 had been paid in full and the property was subject to no liens or encumbrances other than the short-term lease, and defendant also, at that time, owned another adjoining parcel of real estate and had bank deposits of about $160,000. No meeting of shareholders of defendant corporation was called or held for the purpose of authorizing the said extension agreement, nor was it authorized by the written consent of the holders of a majority of the outstanding shares.

Plaintiff is a shareholder of record of defendant corporation with 6,965 shares standing in his name, and claims to own 10,707 shares standing in the names of others. He became a shareholder of record, April 19, 1943, and he attended, in person, the annual meetings of shareholders in 1944, 1945 and 1946. [Apparently the total number of shares of the capital stock of the corporation is 134,259 or more.]

On November 15, 1946, plaintiff's attorney Alpert discussed the matter of the extension of the lease with Watkins, the president of defendant corporation, and stated to Watkins that he (Alpert) had advised plaintiff that plaintiff had a right under section 44 of the Michigan general corporation act (Act No. 327, Pub. Acts 1931) to require defendant to purchase plaintiff's stock. Alpert was later advised that the board of directors of defendant corporation refused to purchase plaintiff's stock, claiming it was not required so to do.

A letter, dated December 19, 1946, was written by Alpert to defendant and on December 20, 1946, plaintiff filed his petition and obtained an order to show cause. At no time prior to filing his petition did plaintiff object in writing to the making of the extension of the lease or demand in writing payment

for his shares and at no time did he surrender to defendant any certificate for any shares.

Plaintiff claims contrary, other or additional facts substantially as follows:

The only other property owned by defendant on August 12, 1946 was its bank account and a small piece of real estate, and there was no showing that this other piece of real estate is income-producing. The trial court in his opinion found that the hotel constituted "the entire holdings of said corporation," and that the lease, and extension thereof, divested the corporation of "substantially all its assets excepting the cash in bank it had, and its franchise to do business." At the annual meeting of the shareholders held on August 9, 1946, no mention was made of a proposed extension of the lease to Agree. Plaintiff, however, demanded at said meeting, that before any sale, lease or extension of lease of the hotel property was made, it should be submitted to the shareholders, which request was rejected.

Members of the board of directors [plaintiff not being a director] own, or control voting rights to, more than two-thirds of the stock of defendant corporation.

On December 19, 1946, Alpert wrote a letter to defendant advising that since no agreement could be reached on a fair cash value of plaintiff's stock, a petition would be filed for appointment of appraisers as provided in said section 44, *supra.*

Plaintiff further claims:

(1) That the reason he did not vote against the extension of the lease was because the extension was voted by the board of directors at a meeting of which plaintiff had no notice or knowledge and no shareholders' meeting to vote thereon was called;

(2) That the reason he did not object in writing within 20 days after the extension of the lease was

because he had no knowledge of such extension until about three months thereafter;

(3) Plaintiff admits that he made no demand in writing for payment of value of his holdings but claims that in his discussions with defendant, defendant did not object to the oral form of the demand, but defendant unequivocally refused payment and denied legal obligation to pay for plaintiff's stock;

(4) Plaintiff further claims that section 44 does not require the demand for payment to be in writing;

(5) Plaintiff admits that he did not surrender his stock certificates but in effect claims that the refusal of defendant to pay was not based on such ground;

(6) Plaintiff claims that defendant's unequivocal refusal to pay constitutes a waiver of tender of stock and that at the hearing on his petition, plaintiff offered to deposit his stock certificates with the court but defendant waived such requirement.

Plaintiff cites section 57 of the act but plants his petition entirely on section 44 of the act and does not ask any relief other than under section 44.

Act No. 327, § 44, subd. 1, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 10135-44 [Stat. Ann. § 21.44]) reads in part as follows:

"If a corporation has authorized the sale, lease or exchange of all or substantially all of its assets a shareholder who was a shareholder at the time such action was authorized and who voted against such action may, within twenty days after the date upon which such action was authorized but not thereafter, object thereto in writing and demand from the corporation the payment of the fair cash value of his shares as of the day preceding the day such action was authorized by the shareholders, excluding from such fair cash value any appreciation or depreciation in consequence of the action authorized, and surrender at such time to the corporation the certificate

or certificates for his shares as to which he is demanding payment.  *  *  *  If, within thirty days after receipt of such a demand by a shareholder, the corporation and the shareholder cannot agree upon the fair cash value of the shares as of the day preceding the day such corporate action was authorized, such value shall be ascertained by three disinterested persons, who shall be appointed by any circuit judge of the county where the corporation has its registered office upon petition and order to show cause either by such shareholder or by the corporation. Once such appraisers have been so appointed all demands for such payment, which have not been determined by agreement, shall be determined by such appraisers.  The appraisers shall promptly submit their determination to the circuit court for the county where the corporation shall have its registered office for confirmation and upon the entry of an order confirming said report their determination shall be final and conclusive and from such order there shall be no appeal.  If such fair cash value shall be determined by agreement, such agreed fair cash value shall be final and conclusive.  If the award or the agreed fair cash value, as the case may be, is not paid by the corporation within sixty days after the entry of such order or after such agreement, such fair cash value may be collected as other debts are by law collectible.  Upon payment by the corporation of such awarded or agreed fair cash value, such shareholder shall forthwith transfer and assign the shares at, and in accordance with, the request of the corporation.''

Act No. 327, § 57, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 10135–57 [Stat. Ann. § 21.57]), is as follows:

''Every corporation formed or existing under this act may sell, lease or exchange all or substantially all of its property and assets, including its good will and its corporate franchises, upon such terms and conditions and for such consideration, which may be

in whole or in part shares of stock in, and/or other securities of, any other corporation or corporations, domestic or foreign, as its board of directors shall deem expedient and for the best interests of the corporation, when and as authorized by the affirmative vote of the holders of a majority of the shares issued and outstanding given at a shareholders' meeting duly called for that purpose, or when authorized by the written consent of the holders of a majority of the shares issued and outstanding: *Provided,* That the articles may require the vote or written consent of the holders of a larger proportion of the shares issued and outstanding."

The corporation adopted leasing of the hotel as one of its principal purposes from the beginning of the corporation's existence. The articles of incorporation indicate leasing as one purpose of the corporation's activity. Under the policy of leasing the hotel, the corporation had paid off a mortgage of $200,000, and had $160,000 in the bank and a parcel of land adjacent to the hotel. The board of directors, by entering into the extension of said lease complained of by plaintiff, was performing in a proper and lawful manner one of the purposes for which it was organized and to perform which it received its franchise, namely, the leasing of said premises. Matters involving the leasing of said premises and the terms and conditions of a lease are matters to be considered and acted upon by the board of directors in the ordinary discharge of its duties and are not matters required to be submitted to the shareholders. Plaintiff does not in his petition allege that the extension of the lease defeated the purposes of the incorporation, nor does he, in his petition, allege fraud or that the extension of the lease will operate to the financial detriment of the corporation.

Plaintiff asks that we excuse his noncompliance with the requirements of section 44 because unknown

to him the directors and not the shareholders made the extension of the lease, yet section 44 shows clearly that it is against the action of a shareholders' meeting that the relief vouchsafed in section 44 is provided. In that connection we note the words in section 44, "and demand from the corporation the payment of the fair cash value of his shares as of the day preceding the day such action *was authorized by the shareholders.*" (Italics supplied.)

It must be considered that the legislature did not intend to afford the relief provided in section 44 where a petitioner falls short of a full and complete compliance with the terms of the statute. We determine that plaintiff has failed to show himself entitled to the specific relief he asks for under section 44 of the act because among other things the specific relief provided in section 44 is available only to a shareholder who in a shareholders' meeting voted against the action complained of and in this case no such action by shareholders occurred.

It is unnecessary in view of our decision of the case to determine other questions raised by plaintiff not specifically decided herein.

In view of our determination that the extension of the lease in question was lawful and valid, the petitioner must fail. The order appealed from is reversed. A decree will be entered in this Court dismissing plaintiff's petition. Costs to defendant.

Bushnell, C. J., and Sharpe. Boyles, North, Dethmers, Butzel, and Carr, JJ., concurred.